## AXT v. LONDON & LANCASHIRE INDEMNITY CO. OF AMERICA.

### No. 486.

District Court, E. D. Wisconsin.
Jan. 17, 1942.

Corrigan & Backus, of Milwaukee, Wis., for plaintiff.

Bendinger, Hayes, Kluwin & Schlosser, of Milwaukee, Wis., for defendant.

DUFFY, District Judge.

Defendant issued to plaintiff a robbery insurance policy which indemnified assured against loss to the amount of $1,000 where the robbery occurred "within the assured's premises", and to the amount of $10,000 where the robbery occurred from the custody of a custodian "outside the assured's premises".

The policy contained the following definition: "'PREMISES' as used in this Policy shall mean the interior of that portion of the building designated in Item 3 of the Declarations which is occupied solely by the Assured in conducting his business." Under Item 3 of the declarations, the following appears: "The portion of the building occupied solely by the Assured in conducting his business and herein called 'the premises' is Rooms 211–213, M and M Bank Building."

The rooms occupied and used by the plaintiff for the conducting of his business, on the second floor of the building above described, consisted of a reception or waiting room and a private office. The reception room was adjacent to the hallway, and was known as Room 211. Adjoining and opening onto the waiting room, on the east, were two private offices. One of these, known as Room 213, was used by the plaintiff as his private office. Immediately to the north was the other private office, known as Room 212. The doors to the two private offices from the reception room were located close together, but there was no passageway between the private offices, 212 and 213. Mr. Axt's secretary had a desk in the waiting room, 211. Mr. Axt had his desk in his private office, 213; the safe from which some jewelry and merchandise were taken was also located in the latter room. The private office 212 was occupied by one C. A. Biebler, who carried on a business which was in no way connected with the plaintiff's business. He rented direct from the owner of the build-

ing; he had his own telephone; and he was not interested in any way in the business conducted by plaintiff. In order for Mr. Biebler to enter his private office from the hallway, it was necessary to cross the reception room rented by the plaintiff. When Biebler first rented his office, it was understood and agreed that he would have the right to cross the plaintiff's reception room, but he apparently paid no rent for that privilege.

On October 5, 1940, at about 11:55 A.M., three robbers entered the reception room, all displaying pistols or revolvers. One of them, pointing his gun at Mr. Axt, said, "This is a stick-up," and went into Mr. Axt's private office. The robbers obtained merchandise and jewelry from the outer section of the safe. They likewise took certain diamonds belonging to a third party, which Mr. Axt then had before him for weighing and inspection.

Mr. Axt customarily carried a diamond wallet in his inside coat pocket, and at the time of the robbery he thus carried diamonds valued in excess of $20,000 on his person. About the time that the robbers had taken most of the jewelry from the safe, they taped Mr. Axt's hands and mouth and forced him from his private office, Room 213, out into the reception room, and then into Mr. Biebler's private office, Room 212. While in that room, one of the robbers took the wallet containing the diamonds from the plaintiff's person. Thereafter the plaintiff was again brought back into the reception room and then into his own private office.

The insurance policy in force at the time of the robbery set forth several definitions which are binding upon the parties hereto. The definition of the term "robbery", so far as it applies to the facts in this case, is as follows: "* * * a felonious and forcible taking of property by violence inflicted upon a custodian, or by putting him in fear of violence; * * * a felonious and forcible taking of property from the person or direct care and custody of a custodian * . * *" There can be no question but that there was a felonious and forcible taking of property by violence. Mr. Axt was the custodian. The evidence shows that he was put in fear of violence. The actions of the holdup men are encompassed within the definition in the policy of what constitutes robbery. The policy defined "merchandise" as "* *. * such goods as are commonly dealt with in the

business carried on by the Assured." There can be no dispute but that the diamonds and other jewelry which were taken by the robbers were such goods as were commonly dealt with in the business carried on by the plaintiff.

The complaint herein contains three causes of action: the first demands recovery of $1,000 for merchandise taken "within the assured's premises"; the second for the coverage amount of $10,000, because of the diamonds taken from the custody of Mr. Axt "outside the assured's premises"; and the third cause of action asks for a reformation of the insurance contract.

■ There is no real dispute as to the first cause of action. It is admitted that the robbers took merchandise from the outer portion of the safe, of a value considerably in excess of the coverage stated in the policy. Plaintiff, therefore, may have judgment for $1,000 on the first cause of action.

The question of recovery on the second cause of action depends upon interpretation of the contract, particularly with reference to the term, "premises". It is defendant's contention that as the robbery commenced in Room 213, which is admittedly on the assured's premises, there can be no recovery on the second cause of action. Defendant argues that whatever was done in any of the rooms, it was all a part of the same robbery, and that a proper construction would be that the entire robbery was on the premises of the assured.

■ I cannot agree with this contention. It is without dispute that diamonds of the value of more than $20,000 were taken from the custody of Mr. Axt in Room 212. This room was no part of the premises rented by Mr. Axt. He did not use it at all in conducting his business. Both in the definition of premises and in Item 3 of the declaration, the words "occupied solely by the Assured in conducting his business" are used. Had the diamonds been taken from the custody of Mr. Axt out in the hallway, or in the next suite of offices, I take it that all parties to this action would agree that the robbery occurred "outside the assured's premises". The fact that some of Mr. Axt's property

was taken from Room 213 does not change the situation. It is a well settled rule that policies of insurance are to be liberally construed in favor of the insured, especially where the insurer, as here, has prepared the contract. Rosenthal v. Insurance Co. of North America, 158 Wis. 550, 149 N.W. 155, L.R.A.1915B, 361, Ann.Cas.1916E, 395; Frozine v. St. Paul Fire & Marine Insurance Co., 195 Wis. 494, 218 N.W. 845; Lewis v. Insurance Co. of North America, 203 Wis. 324, 234 N.W. 499. Plaintiff is, therefore, entitled to recover judgment for $10,000 upon his second cause of action.

■ The third cause of action, for reformation of the insurance contract, was pleaded in the alternative. However, in view of the fact that the decisions on the first two causes of action were based entirely upon an interpretation of the contract, I think I should indicate that in my opinion the plaintiff has not met the burden of proof required which would entitle him to a reformation of the insurance policy. Plaintiff contends that he had asked for a policy that would protect him for a blanket amount anywhere and everywhere in the United States. Apparently there were no such policies being issued at the time he made the inquiry. Nothing was done or said by the agents of the defendant which would justify plaintiff in coming to any such understanding.

■■ Upon demand of the plaintiff, this action was tried before a jury. At the conclusion of the plaintiff's case, the defendant moved for a directed verdict upon the second cause of action. The plaintiff likewise moved for a directed verdict in his favor. At the conclusion of testimony, defendant again moved for a directed verdict upon the second and third causes of action, while the plaintiff made a like motion upon the first and second causes of action. It was apparent that there were no disputed issues of fact as to either the first or second cause of action. As to the third cause of action, this was an equitable proceeding, wherein the plaintiff cannot have a trial by jury, as of right. The court thereupon took the case from the jury, and findings may now be prepared in accordance with this opinion.