[Civ. No. 36508. Second Dist., Div. Two. Apr. 2, 1971.]

LEO SIEGMAN, Plaintiff and Appellant, v.
ORION INSURANCE COMPANY, LTD., Defendant and Respondent.

534

**COUNSEL**

Lippitt & Billet and Jerome S. Billet for Plaintiff and Appellant.

Anderson, McPharlin & Conners and Robert C. Haase, Jr., for Defendant and Respondent.

## OPINION

**FLEMING, J.**—Leo Siegman, a wholesale diamond merchant, carried robbery insurance with Orion Insurance Company, Ltd., (Orion) which covered 80 percent of outside robbery losses but did not cover any part of inside robbery losses. During the life of the policy Siegman was robbed of diamonds valued over $72,000. Orion refused to reimburse him for the loss contending that the robbery had not occurred outside his premises and therefore his losses were not within the coverage of the policy. The trial court found that Siegman had been robbed of one diamond outside his premises and awarded him 80 percent of its value. But the court also found that the balance of the losses from the robbery took place inside Siegman's premises, and it concluded that these losses were not covered by the policy. Siegman appeals.

The issue is whether the principal losses from the robbery occurred inside or outside Siegman's premises within the meaning and definition of the policy. The facts are undisputed. Siegman buys and sells annually a million dollars of cut, polished diamonds. Several times a year he travels to New York to buy merchandise at the Diamond Dealers Club, but he keeps none of his stock there. Seventy-five to 80 percent of his sales are made in Los Angeles, and the balance in Dallas, Houston, Minneapolis, and New York. Siegman always visits his customers, they never visit him. On visits to customers he carries part of his stock with him, and the balance he keeps in a safe which he visits several times a day. Siegman maintains his business records at home, and in his income tax returns he lists his home as his office. In 1966 he received mail and telephone calls at an answering service exchange on Hill Street in Los Angeles. He used a room at the answering service exchange to send out bills, and he sometimes met customers there. Beginning in January 1966 Siegman shared an office on Fifth Street in Los Angeles with one of his customers, Classic Manufacturing Company. Siegman's name appeared on the front door. In a small, partitioned portion of the office Siegman kept his safe, a desk and chair, and jeweler's scales. He paid no rent to Classic, but shared with it the cost of a burglar alarm system.

At 6 p.m. on 22 July 1966 Siegman was robbed at the Fifth Street office. He had opened his safe and gone into Classic's portion of the office to show a diamond to an employee of Classic, when armed robbers entered, tied up Siegman and another, took the diamond Siegman was showing, emptied Classic's safe, emptied Siegman's safe, and then made good their escape.

The insurance policy provided in pertinent part:

"ROBBERY INSURANCE

"ASSURED: Leo Siegman hereinafter called the Assured.

"ADDRESS: c/o Diamond Dealers Club, 30 West 47 St. NYC hereinafter called the premises.

"PREMISES PROTECTION: None.

"Type of Protection: Outside Robbery and Consignments.

. . .

"The Underwriters' liability is limited to

"1. U.S. $    nil      any one loss in respect of inside robbery

"2. U.S. $  50,000    any one loss in respect of outside robbery, including

15,000    consignments

. . .

"PREMISES as used in this policy shall mean the interior of that portion of the building which is occupied by the Assured in conducting his business."

■ Since there is no conflict in the extrinsic evidence, we are required to make an independent determination of the meaning of the policy. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].)

■ Siegman first contends that his Fifth Street office did not meet the definition of premises set forth in the policy. We disagree. ■ The interpretation to be given the word, premises, depends on its use in the instrument where it appears and on the subject matter to which it refers. (*Harris* v. *Alcoholic Bev. etc. Appeals Bd.,* 238 Cal.App.2d 24, 29 [47 Cal.Rptr. 424].) ■ The policy defines premises as "that portion of the building which is occupied by the Assured in conducting his business." It is true that Siegman is a wholesale merchant who buys and sells at his customers' places of business, not his own, and in one sense it can be said that he conducts his business away from his own place or places of busines. But the meaning of the word premises under this definition becomes clear when we consider the differentiation made in robbery insurance between coverage inside the premises and coverage outside the premises. A jewelry merchant usually keeps his stock of merchandise at one location, his store or his office, and this one location offers a stationary, vulnerable, and fertile target for

robbery. When the merchant travels, he normally carries only samples of his merchandise, and thus presents a small, moving target for robbery. The merchant is offered two kinds of robbery insurance: inside coverage, to protect his permanent location; outside coverage, to protect him when he travels. Because the risks of loss are higher, the premium for inside coverage is greater than for outside coverage.

Here Siegman used the same office for many months. It was the focal point of his business. His name was on the door. He stored his merchandise there, and he carried only a portion of his merchandise on visits to customers. We conclude that the office where Siegman stored his merchandise was his premises within the meaning of an insurance policy which differentiated in coverage between inside robbery and outside robbery.

This construction of the word premises in the policy does not distort the intent and reasonable expectation of the parties. (See *Atlantic Nat. Ins. Co.* v. *Armstrong,* 65 Cal.2d 100, 112 [52 Cal.Rptr. 569, 416 P.2d 801].) The same construction was adopted by Siegman himself in correspondence with his insurance broker immediately prior to the time of the robbery. During negotiations in connection with the renewal of his robbery insurance Siegman wrote letters to his broker in which he described his Fifth Street office as his premises. In his handwritten proposal for insurance, in response to the question, "Our premises are located at," Siegman wrote "5th 315 W. 5 St. Los Angeles, Calif." On 1 July 1966 Siegman wrote: "I would not be interested in the block or inside or safe burglary, if it will be a high premium, because I have practically a 100% protection on the safe anyway." On 10 July he wrote: "1) my mailing address is 448 S. Hill St. My premises are 315 W. 5 St. 2) am mainly interested in 100,000 outside holdup . . . 3) *Possibly* interested in 250,000 safe burglary and inside holdup . . . #6 I am sharing offices with Classic Mfg. Co. We have two alarm buttons, which if pulled also closes building, elevators etc.—Besides myself there are usually two or three people on the premises . . ." It is clear that Siegman was no neophyte and knew the difference between inside and outside robbery insurance. It is also clear that he made a conscious choice to limit his coverage (and the amount of his premium) to outside robbery.

In the alternative, Siegman contends that because there are two definitions of premises in the policy ("Diamond Dealers Club" and "building . . . occupied by the Assured in conducting his business") the policy is ambiguous, and therefore he should be given the advantage of the definition most favorable to him ("Diamond Dealers Club"). Again we disagree. Siegman's argument might be in point if we were required to decide whether or not Diamond Dealers Club was his premises. But the robbery occurred

elsewhere, and the question is whether that elsewhere falls within the outside robbery coverage of the policy. Siegman could have had several premises besides the Diamond Dealers Club. But he could not have extended outside robbery coverage to them merely by failing to list them as premises in his policy. As previously discussed, the Fifth Street office fell within the policy definition of premises and therefore was not included within the outside robbery coverage of the policy.

One diamond, valued at $420, was taken from Siegman while he was in Classic's portion of the office. That part of the robbery occurred outside his premises (*Axt* v. *London & Lancashire Indemnity Co.,* 42 F. Supp. 1013, 1015, affd. 131 F.2d 370, 372), and the trial court correctly awarded Siegman $336 (80 percent of value) for a loss covered by his policy.

The judgment is affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 26, 1971.