[Civ. No. 49854. First Dist., Div. Three. Mar. 3, 1982.]

APPAREL CITY SEWING MACHINE COMPANY, INC., Plaintiff and Appellant, v.
TRANSAMERICA INSURANCE GROUP, Defendant and Respondent.

**COUNSEL**

Raymond H. Levy, Christopher A. Brose and Jeffrey T. Wilber for Plaintiff and Appellant.

Low, Ball & Lynch, Raymond Coates and Lawrence G. Townsend for Defendant and Respondent.

OPINION

WHITE, P. J.—This is an action to determine the coverage afforded to plaintiff and appellant Apparel City Sewing Machine Company, Inc., by an insurance policy issued by defendant and respondent Transamerica Insurance Group. The matter was submitted to the trial court for decision on the pleadings and the trial briefs filed by the parties. There is no factual dispute in the instant case.

On April 12, 1974, appellant purchased a policy of insurance from respondent which included coverage for a loss resulting from the interruption of business caused by a fire. On December 17, 1976, while said policy was in effect, there was a fire at appellant's premises which resulted in an interruption of its business affairs. "An accountancy firm hired to compute the loss, determined that [appellant's] gross earnings for the twelve months following the loss, had the loss not occurred, would have been $390,744.00." The net earnings loss resulting from the fire was computed by the same firm to be $41,603. The parties do not contest the accuracy of these figures.

Paragraph six of the business interruption form of the insurance policy issued by respondent provides: "CONTRIBUTION CLAUSE: IN CONSIDERATION OF THE RATE AND FORM UNDER WHICH THIS POLICY IS WRITTEN, THIS COMPANY SHALL BE LIABLE, IN THE EVENT OF LOSS, FOR NO GREATER PROPORTION THEREOF THAN THE AMOUNT HEREBY COVERED BEARS TO THE CONTRIBUTION (COINSURANCE) PERCENTAGE SPECIFIED ON THE FIRST PAGE OF THIS POLICY (OR ENDORSED HEREON) OF THE GROSS EARNINGS THAT WOULD HAVE BEEN EARNED (HAD NO LOSS OCCURRED) DURING THE 12 MONTHS IMMEDIATELY FOLLOWING THE DATE OF DAMAGE TO OR DESTRUCTION OF THE DESCRIBED PROPERTY." The amount of coverage under the policy at the time of the fire was $60,000. The coinsurance percentage specified in the policy is 50 percent.

Appellant filed a complaint in the Superior Court of San Francisco County alleging under the terms of the policy issued by respondent, it was entitled to $20,801.50 (one-half of the net earnings loss it sustained

on account of the fire). In its answer, respondent alleges that the amount due appellant by virtue of the business interruption coverage provided by the policy issued by respondent "is and was $12,776.28, and this defendant issued and delivered to plaintiff its draft in said amount on or about July 27, 1977, . . ."

Based upon the pleadings and the trial briefs of the parties, the trial court concluded: "1. The contribution clause is valid and enforceable and is neither vague nor ambiguous.

"2. Pursuant to the contribution clause, defendant was not liable for any greater portion of the loss then [*sic*] the amount covered, $60,000.00 bore to the contribution (coinsurance) percentage, to wit, fifty (50%) percent of the gross earnings, which were $390,744.00.

"3. Fifty (50%) percent of $390,744.00 equals $195,372.00 and the percentage of $60,000.00 to $195,372.00 equals 30.71%.

"4. The plaintiff was therefore entitled to 30.71% of his loss of $41,603.00 or $12,776.28, which has already been paid to plaintiff." Thereafter judgment was entered in favor of respondent from which appellant appeals.

Appellant contends on appeal that the contribution clause is ambiguous and therefore must "be construed against the insurer in order to achieve the object of coverage for the losses to which the policy relates." Appellant also contends that Insurance Code sections 2070, 2071 and 2079 are applicable to this case, and under these code sections "[r]espondent's contentions amount to illegal conditions and are thus void (even if deemed included within the policy) . . . ."

### Ambiguity of Contribution Clause

Appellant contends that the policy at the time of the loss provided coverage in the amount of $60,000 "for loss of gross earnings subject to fifty (50%) percent coinsurance. As there was no other insurance it becomes apparent that Appellant became its own coinsurer to the extent of one-half (1/2) of any loss." Appellant claims the contribution clause merely provides that "the carrier shall not be responsible for a greater proportion of the loss than the amount covered bears to the contribution percentage specified on the first page of the policy. This would be the fifty (50%) percent . . . . Accordingly, it is submitted that as the

Appellant was its own fifty (50%) percent coinsured, the Respondent carrier was responsible for one-half (1/2) of the afore referred to $41,603.00, to wit, $20,801.50, less the $12,776.28 already paid by Respondent to Appellant, thus now leaving $8,025.22 due to Appellant." Simply stated, appellant's position is that he is entitled to 50 percent of the loss not to exceed the amount of insurance ($60,000). Appellant contends that the trial court erroneously imposed "upon Appellant reductive formulas not expressed in the [policy]."

Since no extrinsic evidence was offered or received as an aid in interpreting the provisions of the insurance policy, this court is not bound by the interpretation of the trial court. In making an independent determination of the meaning of the insurance policy we must look to the "accepted canons of interpretation." (*Becker* v. *State Farm Mut. Auto. Ins. Co.* (1975) 52 Cal.App.3d 282, 284 [124 Cal.Rptr. 739].) ■ The general rules relating to the interpretation of insurance clauses containing ambiguous or uncertain language were well articulated by the court in *Beaumont-Gribin-Von Dyl Management Co.* v. *California Union Ins. Co.* (1976) 63 Cal.App.3d 617, 622 [134 Cal.Rptr. 25], as follows: "Any ambiguity or uncertainty in an insurance policy must be resolved in favor of the insured. (*Insurance Co. of North America* v. *Electronic Purification Co.*, 67 Cal.2d 679, 686 ....) If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; whether the doubt relates to extent or fact of coverage, peril insured against, amount of liability or persons protected, the language will be understood in its most inclusive sense for the benefit of the insured. (*State Farm Mut. Auto. Ins. Co.* v. *Elkins*, 52 Cal.App.3d 534, 538 ....) ■ If *semantically permissible*, the insurance contract will be given such construction as will fairly achieve its manifest object of securing indemnity to the insured for losses to which the insurance relates. (*Holz Rubber Co., Inc.* v. *American Star Ins. Co.*, 14 Cal.3d 45, 60 ...; *Crane* v. *State Farm Fire & Cas. Co.*, 5 Cal.3d 112, 115 ....) Moreover, 'in doubtful cases, the law favors the insured over the insurer.' (*State Farm Mut. Auto. Ins. Co.* v. *Elkins*, 52 Cal.App.3d at p. 538 ....)"

■ The rules pertaining to the interpretation of ambiguous or uncertain language in insurance policies are only applicable when in fact a policy "actually presents some uncertainty or ambiguity." (*Farmers Ins. Exch.* v. *Harmon* (1974) 42 Cal.App.3d 805, 809 [117 Cal.Rptr. 117].) There is no question that an insurance company has the right to limit the coverage of a policy issued by it, and when it has done so, the plain

language of the limitation must be respected. (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 508 [99 Cal.Rptr. 617, 492 P.2d 673]; *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914]; see also *California State Auto. Assn. Inter-Ins. Bureau* v. *Warwick* (1976) 17 Cal.3d 190, 194-195 [130 Cal.Rptr. 520, 550 P.2d 1056].) In other words, when a clause limiting coverage appears in clear and conspicuous terms in an insurance policy, it will be given effect. (See *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 271 [54 Cal.Rptr. 104, 419 P.2d 168]; *Farmers Ins. Exch.* v. *Harmon, supra,* at p. 809.) "The courts will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed. [Citation.] Absent circumstances indicating a contrary intention, words in an insurance policy are to be used in their plain, ordinary and popular sense." (*Farmers Ins. Exch.* v. *Harmon, supra,* at p. 809; *Allstate Ins. Co.* v. *Shmitka* (1970) 12 Cal.App.3d 59, 67 [90 Cal.Rptr. 399].)

Application of the above basic rules relating to the interpretation of insurance contracts to the insurance contract under consideration in the instant case supports the trial court's conclusion. As noted above we are not bound by the trial court's interpretation of the insurance policy involved in this case, but our independent determination has resulted in an interpretation that is consistent with that of the trial court.

The full text of paragraph six of the business interruption form which is entitled "CONTRIBUTION CLAUSE" has been set out earlier in this opinion. If we were to adopt the interpretation of the contribution clause proposed by appellant, we would have disregarded most of the language of the clause. In determining the meaning of the contribution clause we cannot ignore any language in the clause which is not ambiguous. "[T]he understanding of the ordinary person is the standard to be used in construing an insurance contract [citations]. It is unreasonable for one to block from his vision subject matter contained in the rest of the sentence or to construe the language of this exception clause without reference to either the subject from which it is to be excepted or its context as one of several areas of concern dealt with in the exclusions portion of the policy." (*Becker* v. *State Farm Mut. Auto. Ins. Co., supra,* 52 Cal.App.3d 282, 287.) Specifically, appellant would disregard the language which refers to the gross earnings as follows, "the gross earnings that would have been earned (had no loss occurred) during the 12 months immediately following the date of damage to or destruction of the described property."

It is clear that the amount owing under the policy in question is to be calculated using a ratio or fraction given the use of the words "proportion" and "bears." There is no dispute that the reference to the amount covered is to the maximum sum that can be collected under the policy ($60,000). Likewise there is no dispute that the contribution or coinsurance percentage is 50 percent. Appellant also does not contest the figures of the accountant and therefore agrees that his gross earnings for the 12-month period immediately following the fire would have been $390,744.

Accordingly, the individual phrases in paragraph six are not ambiguous or uncertain. However, we must still see whether the language in paragraph six is ambiguous or misleading or uncertain in explaining the ratio to be used in determining the coverage afforded under the policy in question. We do not regard the language setting out the ratio to be ambiguous, misleading or uncertain. Paragraph six merely provides that respondent was not liable for any greater sum than the maximum amount of coverage ($60,000) bears to the contribution percentage (50 percent) of the gross earnings ($390,744). The trial court determined that only $12,776.28 was due and owing under the insurance policy and set its calculations as follows: "Fifty (50%) percent of $390,744.00 equals $195,372 and the percentage of $60,000 to $195,372.00 equals 30.71%. [¶] .... The plaintiff was therefore entitled to 30.71% of his loss of $41,603.00 or $12,776.28, which has already been paid to plaintiff." The fact that the formula used in the policy to determine the coverage provided for a loss is not as simple as that considered in some cases, does not mean that the formula is ambiguous, uncertain or misleading.* (E.g., *Siegman* v. *Orion Ins. Co.* (1971) 16 Cal.App.3d 533, 535 [94 Cal.Rptr. 80].)

---

*In *Jefferson Ins. Co.* v. *Superior Court* (1970) 3 Cal.3d 398, 400, footnote 1, 401, footnote, 3 [90 Cal.Rptr. 608, 475 P.2d 880], the California Supreme Court decided a case concerning an insurance policy which contained a clause very similar to the one in question in this case. However, the court in *Jefferson* was considering different issues than those presented in this case. The court did not specifically address the issue whether such a clause is ambiguous. The court in *Jefferson* determined the meaning of the term "'actual cash value'" as used in the clause. However, the court did not decide whether the ratio set out in the clause was uncertain or ambiguous. Although the court in *Jefferson* did not specifically address the issue whether the ratio set out in the clause was uncertain or misleading and therefore is not authority for the proposition that the clause under consideration in the instant case is not ambiguous, we note that the Supreme Court might have indicated in its opinion that the clause was uncertain or ambiguous if the court had so felt.

Appellant further argues that the other insurance clause contained in the policy supports his interpretation of the coverage afforded under paragraph six. The clause provides: "PRO RATA CLAUSE: THE LIABILITY UNDER THIS POLICY SHALL NOT EXCEED THAT PROPORTION OF ANY LOSS WHICH THE AMOUNT OF INSURANCE HEREUNDER BEARS TO ALL INSURANCE, WHETHER COLLECTIBLE OR NOT COVERING IN ANY MANNER THE LOSS INSURED AGAINST BY THIS POLICY." The pro rata clause and the contribution clause are not inconsistent with each other. These two clauses when read together simply mean that the required calculations under the contribution clause will be performed and if the liability under paragraph six exceeds the amount derived from the formula set out in the pro rata clause, the amount owing under paragraph six will be reduced to the amount determined using the formula in the pro rata clause.

### Applicability of Insurance Code

■ Appellant contends that paragraph six of the business interruption form is invalid under Insurance Code sections 2070-2080.

Section 2070 of the Insurance Code provides: "All fire policies on subject matter in California shall be on the standard form, and, except as provided by this article shall not contain additions thereto. No part of the standard form shall be omitted therefrom except that any policy which in addition to coverage against the peril of fire includes substantial coverage against other perils need not comply with the provisions of the standard form of fire insurance policy or Section 2080; provided, that the coverage of such policy with respect to the peril of fire, when viewed in its entirety, is substantially equivalent to or more favorable to the insured than that contained in such standard form fire insurance policy."

Section 2071 of the Insurance Code sets out the standard form for a fire insurance policy and states that a fire insurance policy shall provide payment of "the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and *without compensation for loss resulting from interruption of business or manufacture, ...*" (Italics added.)

Section 2071 of the Insurance Code makes it clear that the standard fire insurance contract concerns the amount to be paid for physical damage to property. The standard fire insurance contract is not concerned with compensating a person or entity for interruption of business. Under section 2079 of the Insurance Code clauses may be added to the standard form "[c]overing subject matter and risks not otherwise covered; . . ." The Insurance Code does not cover the form or limitations of the additional permissive clauses. Accordingly, sections 2070-2080 of the Insurance Code are not applicable to the business interruption form.

The judgment is affirmed.

Scott, J., and Barry-Deal, J., concurred.