[Civ. No. 21038. Third Dist. Apr. 26, 1982.]

TRANSPORT INDEMNITY COMPANY, Plaintiff and Appellant, v. W. D. SCHNACK, Defendant and Respondent.

COUNSEL

Reid & Axelrod, Peter Axelrod and Thomas Kristof for Plaintiff and Appellant.

Clark L. V. Deichler and E. Elizabeth Summers for Defendant and Respondent.

OPINION

**BLEASE, J.**—In this appeal we conclude that the fueling of an aircraft "arises out of" its "use or maintenance," as provided by a policy of aircraft insurance, and that liability for damages proximately caused thereby is within the policy coverage.

FACTS

The action stems from a fire which occurred while Schnack was fueling his aircraft on May 3, 1980, at a hangar owned by him. The fire totally destroyed Schnack's aircraft and the hangar, as well as aircraft and other property owned by third parties who had rented hangar space from Schnack.

At the time of the fire, Transport had issued an aircraft liability policy to Schnack in which Transport agreed: "To pay on behalf of the

Insured [Schnack] all sums which the Insured shall become legally obligated to pay as damages because of: ... [¶] C. injury to or destruction of property, including loss of use thereof, hereinafter called 'property damage'; ... [¶] caused by an occurrence and *arising out of* the ownership, maintenance, or use of the aircraft ...." (Italics added.)

After the fire, Transport reimbursed Schnack for the value of his aircraft and undertook his defense in the separate actions filed by the third parties whose property was destroyed in the fire. Transport also initiated this action, seeking a declaration that it was not liable under the terms of the policy to defend or indemnify Schnack for damages caused by the fire.

At the trial, the jury, by special verdict, found: "1. The sole proximate cause of the fire that destroyed the hangar and its contents was Dr. Schnack's use or handling of the gasoline fuel hose.

".      .      .      .      .      .      .      .      .      .      .      .      .      .      .      .

"2. At the time the fire occurred, Dr. Schnack was using or handling the fuel hose in connection with the fueling of his aircraft...."

Based upon these verdicts, the trial court held Schnack entitled to coverage under the policy, ruling that "[t]he fueling process ... is inherently a part of the 'use, ownership or maintenance' of the aircraft." Transport appeals. We affirm the judgment.

### DISCUSSION

Transport argues that the fire was not caused by the *aircraft.* Schnack did not "use" the aircraft so as to cause the damage. Nor did the aircraft cause the fire because of faulty maintenance. While the fire may have occurred *incident to* the maintenance of the aircraft, it did "arise out of" it.

Transport has mislaid its grammar book. The policy predicates coverage upon liability for property damage "[(a)] caused by an occurrence and [(b)] arising out of the ... maintenance or use of the aircraft ...." "[A]rising out of" serves to identify the events ("occurrence") for which liability is covered by broadly linking them to the use, ownership or maintenance of the aircraft. "Cause," on the other hand, links the events ("occurrence") and the damage suffered. (See Prosser, Torts

(4th ed. 1971) Proximate Cause, §§ 41-45, pp. 236-290.) The insurance policy does not purport to regulate the theory of liability or the standard of causation, but only to specify the events upon which a covered liability is predicated and to broadly link them (i.e., the "occurrence") to the damage complained of by the word "cause."

No issue of "cause" is tendered. We are asked only to plumb the meaning of "arising out of." We have found no aircraft insurance cases interpreting the phrase (see generally 11 Couch on Insurance (2d ed. 1963) §§ 42:424-42:428, pp. 203-206) and the California Insurance Code sheds no light. However, "[i]t has been judicially recognized that the aircraft insurance industry apparently drew upon the experience of the automobile insurance industry, for generally the aircraft policies have a coverage analogous to the bodily injury and property damage liability in automobile policies, and, when desired, a coverage analogous to collision coverage in such policies." (Fn. omitted.) (3 Speiser et al., Aviation Tort Law (1980) ch. 22, § 22:6, p. 25.) Since the policy here is phrased in terms common to automobile insurance policies, it is appropriate to look to analogous automobile coverage cases. (See *Republic Ins. Co.* v. *Haverlah* (Tex.Civ.App. 1978) 565 S.W.2d 587.)

"It has been stated in a few cases that the words 'arising out of' as used in the ownership, maintenance, or use clause of an automobile liability insurance policy, generally mean 'originating from,' 'growing out of,' or 'flowing from.'" (Fn. omitted.) (12 Couch on Insurance (2d ed. 1981) § 45.61, p. 294, and cases cited therein.) "[T]he words 'arising out of the ownership, maintenance, or use of the . . . [vehicle]' are not words of narrow and specific limitation, but are broad, general, and comprehensive terms effecting broad coverage and . . . they are intended to, and do afford protection to the insured against liability imposed upon him for all damages . . . in connection with or arising out of such use. 'Arising out of' are words of much broader significance than 'caused by'. They are ordinarily understood to mean '"originating from" "having its origin in," "growing out of" or "flowing from"', or in short, 'incident to, or having connection with', the use of the . . . [vehicle.]" (*Red Ball Motor Freight* v. *Employers Mut. Liability I. Co.* (5th Cir. 1951) 189 F.2d 374, 378.)

■ The fueling of an aircraft patently has a "connection with" its "use" *or* "maintenance." Indeed, it has such a direct "connection with" the use and maintenance of the aircraft as to render specious any con-

trary claim not involving the aircraft's repose (say) in the Smithsonian Institution. Schnack's negligent use of the fueling hose manifestly arose out of his use or maintenance of the aircraft.

We find support for this unexceptional conclusion in numerous decisions. In *Red Ball Motor Freight* v. *Employers Mut. Liability I. Co., supra,* 189 F.2d 374, the insured's employee refueled the company truck but failed to completely close the fuel tank valves. The leaking gasoline flowed for several blocks before exploding. In holding that the negligent refueling arose out of the use of the employer's truck, the court observed: "[F]ueling the truck for the journey was just as much a 'use' of it [as] making the journey would be. . . . [W]hat was being done at the time the wrongful cause was set in motion was an act clearly arising out of either the maintenance or the use of the truck in readying it for its journey." (*Id.,* at pp. 377-378.)

In *Roche* v. *U. S. Fidelity & Guaranty Co.* (1936) 247 App.Div. 335 [287 N.Y.S. 38] [affd. without opn., 273 N.Y. 473 (6 N.E.2d 410)], plaintiff was injured by an explosion which occurred when the insured, a lighted cigarette in his mouth and a lighted match in his hand and his mind elsewhere, approached the automobile being fueled to read the fuel guage. The court concluded that measurement of the gas in the fuel tank was essential to the maintenance or use of the automobile. (*Id.,* at pp. 40-42.)

In *State Farm Mut. Auto. Ins. Co.* v. *Pan American Ins. Co.* (Tex. 1969) 437 S.W.2d 542, the court held that fueling a vehicle constitutes "maintenance" of the vehicle, concluding: "[M]aintenance doubtless includes the idea of keeping in repair, but has a much broader meaning involving the concept of supporting, sustaining, carrying on and continuing. It appears inescapable that the replacement of fuel which has been exhausted with use and without which a motor vehicle is inoperative, is a species of maintenance in the same sense as repairing the carburetor as a part of the fuel system, or inflating a flat tire, or changing the oil in the crankcase of the engine. The only purpose of the act of refueling . . . was to capacitate the . . . vehicle to perform its transportation functions. This act, standing alone, constituted 'maintenance' of the vehicle . . . ." (*Id.,* at p. 545.)

Finally, in *United Services Automobile Assn.* v. *United States Fire Ins. Co.* (1973) 36 Cal.App.3d 765 [111 Cal.Rptr. 595], the named insured's son attempted to start a friend's car by pouring gasoline into the

carburetor. It backfired, igniting the gasoline container. The son wildly threw the burning can, which injured a friend. The court held that the priming of the carburetor arose out of the "use" of the automobile, since it was necessary to make the vehicle operative. (*Id.*, at p. 770.)

Transport seeks refuge in *Pacific Indem. Co.* v. *Truck Ins. Exch.* (1969) 270 Cal.App.2d 700 [76 Cal.Rptr. 281], which held a truck owner not covered by his policy for injuries sustained when a chain hoist, used to remove the truck engine for repairs, broke, causing the engine to fall on him. The court held that the damages did *not* arise out of the maintenance of the truck. Rather, "[t]he actionable negligence lay in the maintenance of the chain hoist . . . . . [T]he injury was directly caused by an 'independent act, or intervening cause wholly dissociated from, independent of and remote from the use'" of the truck. (*Id.*, at pp. 704-705.) Here, the fuel hose was not defective; there was no independent cause of damage rooted in events wholly extrinsic to the fueling activity.

The judgment is affirmed.

Puglia, P. J., and Sparks, J., concurred.