[Civ. No. 22282. Third Dist. Mar. 29, 1983.]

SAFECO INSURANCE COMPANY, Plaintiff and Appellant, v.
MICHAEL SHANE GILSTRAP et al., Defendants and Respondents.

COUNSEL

Porter, Scott, Weiberg & Delehant, Russell G. Porter, Bradley R. Larson and Terence J. Cassidy for Plaintiff and Appellant.

G. Chris Larson, Karl J. Schnetz, Gallawa, Brown & Kroesch and James C. Brown for Defendants and Respondents.

OPINION

SPARKS, J.—We are presented with a dispute concerning the coverage provided in a "Homeowner's" insurance policy for an accident occasioned by the negligent entrustment of a motorcycle. The trial court, in a declaratory relief action initiated by the insurance carrier, determined that coverage was provided.

Although we have found no California case directly on point, our review of related appellate opinions of this state, together with an analysis of sister state decisions, persuades us that under the circumstances presented coverage is expressly and unambiguously excluded under the provisions of the policy. Accordingly, we shall reverse the judgment.

In dispute here is the scope of coverage contained in the "comprehensive personal liability" portion of a homeowner's policy of insurance. The policy was

issued by Safeco Insurance Company (Safeco) to Travis and Dorothy Gilstrap (hereafter the Gilstraps). Their son, Donald, owned a Suzuki motorcycle. At the time of the accident Donald was serving in the United States Navy and was stationed away from home. Prior to leaving for his assigned military destination, Donald received permission from his parents to store his motorcycle in their garage. The Gilstrap's youngest son, Michael, was then 14 years old and was not a licensed driver. On the day in question Michael removed the motorcycle from the garage and took Patricia Leverton (hereafter referred to as "plaintiff," although she is a defendant in this action for declaratory relief filed by Safeco) for a ride. Plaintiff was injured while riding as a passenger on the motorcycle operated by Michael when it collided with another motorcycle driven by Frank Brown. Plaintiff sued the Gilstraps and their two sons, Donald and Michael, as well as Frank Brown. Safeco brought this declaratory relief action seeking a declaration that it owed no duty of defense or indemnification under the policy to any of the parties to the personal injury suit. Although discussed later in greater detail, the policy provides the Gilstraps with general liability coverage, but excludes coverage for injuries arising out of the ownership and use of a motor vehicle.[1] In an apparent attempt to avoid this exclusion, plaintiff's complaint includes a cause of action against the Gilstraps based on a theory of negligent entrustment of the motorcycle to Michael. The complaint also alleges a claim against Michael based on negligent operation of the motor vehicle.

The trial court determined Safeco had no duty to defend the action as it relates to a claim against Michael for negligent operation;[2] the court also ruled, however, that Safeco has a duty to defend the Gilstraps as to the cause of action for negligent entrustment and to pay any judgment rendered on that claim.

## DISCUSSION

Under the coverage clause of the policy, Safeco "agrees to pay on behalf of the insured [the Gilstraps] all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence." An "occurrence" is broadly defined to mean "an accident . . . which results . . . in bodily injury or property damage." In the exclusionary clause, coverage is excluded for "bodily injury or property damages arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any motor vehicle owned or operated by, or rented or loaned to any insured . . . ."

---

[1] "Motor vehicle" is defined in the policy as a "land motor vehicle . . . designed for travel on public roads . . . ." The parties are in agreement that the definition of "motor vehicle" includes a motorcycle.

[2] Michael is also an "insured" under the terms of homeowner's policy.

As we view this case, the dispositive issue is whether the events giving rise to the insureds' liability were exclusively related to the use and operation of the motorcycle. In light of the express terms of the exclusion provisions, can it be said that when the Gilstraps negligently entrusted the vehicle to Michael, their liability arose out of some conduct unrelated to the operation or use of a motor vehicle loaned to any insured? The answer is no.

The leading California case relating to this subject is *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]. In *Partridge,* the insured wounded a passenger in his vehicle when a gun he was holding accidentally discharged as the vehicle struck a bump. It was held the insured's prior conduct in modifying the gun's trigger mechanism was independent of the use of the vehicle and that both the homeowner's policy and the automobile liability policy provided coverage.[3]

In *Partridge,* the insurer conceded the obvious—that if the gun had accidentally fired while the insured was walking down the street or running through the woods, any resultant damage would have been covered by the homeowner's policy. (10 Cal.3d at p. 105.) The insurer contended, however, coverage could not apply to damages sustained while riding in an automobile because the policy excluded injuries "arising out of the . . . use . . . of a motor vehicle . . . ." (*Id.,* at p. 107.) The Supreme Court concluded the "crucial question presented is whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving). Defendants [the insured and the injured person] correctly contend that when two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy." (*Id.,* at p. 102.) The court then held that "although the accident occurred in a vehicle, the insured's negligent modification of the gun suffices, in itself, to render him fully liable for the resulting injuries. Under these facts the damages to [the injured person] are, under the language of the homeowner's coverage clause, 'sums which the Insured . . . [became] legally obligated to pay' because of the negligent filing of the trigger mechanism; inasmuch as the liability of the insured arises from his non-auto-related conduct, and exists independently of any 'use' of his car, we believe the homeowner's policy covers that liability." (*Id.,* at p. 103.)

The separate and independent act in *Partridge* giving rise to liability was a "non-auto-related act," i.e., the filing of the gun trigger. That act had nothing to do with the use or operation of a vehicle. In contrast to *Partridge,* the obligation of the insureds in this case did not arise from an act separate and independent from the use of the vehicle itself. The conduct of the Gilstraps in negligent-

---

[3]In the present case, the motorcycle was not covered by a policy of automobile liability insurance.

ly entrusting the vehicle to their minor son was an act separate only in the fact that it preceded the collision. This conduct cannot be disassociated from the use of the vehicle itself. Conduct which is dependent upon and related to the use of the vehicle cannot be deemed an independent act of a homeowner under the homeowner's coverage as provided in the policy. (*National Indemnity Co.* v. *Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102, 108-109 [157 Cal.Rptr. 98]; *State Farm Fire & Cas. Co.* v. *Camara* (1976) 63 Cal.App.3d 48, 54-55 [133 Cal.Rptr. 600].)

A review of analogous California decisions dealing with questions of vehicle-related conduct is instructive. *Glens Falls Ins. Co.* v. *Rich* (1975) 49 Cal.App.3d 390 [122 Cal.Rptr. 696], like *Partridge,* involved an accidental discharge of a gun in the insured's vehicle during a hunting trip.[4] We described that case and its holding this way: "[The insured] stopped his vehicle on a logging road to shoot a squirrel, and reached under the seat for his shotgun as he opened the car door. The shotgun discharged, injuring his passenger. The [*Glens Falls*] court held as follows: 'The rationale of *Partridge* is applicable to the instant case. The undisputed facts establish that [the insured] placed a loaded gun under the front seat of his vehicle and that the gun fired when he reached for the gun. Such an act, if found to be negligent and a proximate cause of [the victim's] injury, would make [the insured] liable to [the victim] for his injuries. Accordingly, [the insured's] homeowner's policy would provide coverage for [the victim's] claim. The trial court's determination that there was a causal connection between [the insured's] use of the vehicle does not affect the coverage under the homeowner's policy. We perceive that under the holding of *Partridge* [the victim] may recover if the accident arose from a cause not involving the use of the vehicle or from a cause concurrent with any cause arising from the use of the vehicle.' (49 Cal.App.3d at pp. 394-395.)" (*State Farm Fire & Cas. Co.* v. *Camara, supra,* 63 Cal.App.3d at p. 53.)

We addressed a similar issue in *State Farm Fire & Cas. Co.* v. *Camara, supra,* 63 Cal.App.3d 48. There the insured negligently redesigned and rebuilt his Volkswagen into a dune buggy. On a deer hunting trip the insured negligently drove off the road and down a very steep hillside. The vehicle overturned and a passenger was injured. The passenger sought to establish coverage under a homeowner's policy similar to one at issue here. We held that there was no coverage because in order "for the homeowner's policy to cover the loss, the liability must arise from non-vehicular conduct and must exist independently of use or ownership of a vehicle." (*Id.,* at p. 56.) We reasoned that "[i]n

---

[4]In a third gun case, the Court of Appeal in *Aetna Casualty & Surety Co.* v. *Safeco Ins. Co.* (1980) 103 Cal.App.3d 694 [163 Cal.Rptr. 219], similarly held that the standard exclusionary provision of a homeowner's policy did not apply to a shooting accident which occurred while a rifle was being loaded inside a parked vehicle. The court correctly concluded that the discharge of the rifle arose out of the use of the firearm and not from the use of the vehicle.

contrast to *Partridge* . . . and *Glens Falls,* the injury in the instant case did not involve an instrumentality other than and separate from the vehicle itself. Under the undisputed facts, the accident would not have happened *but for* the [insured's] design and construction of the dune buggy. But it does not follow that the accident did not *arise out of the operation or use of* a motor vehicle. The facts show the contrary. As *Partridge* held, the nonvehicle-related cause must be independent of the vehicle-related cause in order for the liability to be covered by the homeowner's policy. Although the operation or use of the dune buggy was not the sole cause of the accident, any contributing *design* cause was dependent upon such operation or use, such that any liability for negligent design necessarily arose out of the operation or use of the motor vehicle. [¶] In other words, the *only* way in which plaintiff could have been exposed to the claimed design risk was through the operation or use of the motor vehicle. Under such circumstances [insured's] asserted liability could not but arise out of the ownership, maintenance, operation or use of the vehicle; it was therefore excluded." (*Id.,* at pp. 54-55; fn. omitted; italics in original.)

The necessity for independent nonvehicular conduct in order to avoid the standard exclusionary clause was again emphasized in *National Indemnity Co.* v. *Farmers Home Mutual Ins. Co., supra,* 95 Cal.App.3d 102. There the insured was babysitting her five-year-old nephew and later drove him home. She parked across the street from the nephew's house. The child abruptly alighted from the parked vehicle and ran into the street where he was struck and killed by another vehicle. The court rejected the claim that the insured's negligent failure to supervise the child constituted nonvehicular conduct. Instead, the court concluded that "[h]ere the act of the insured which gives rise to liability, if such liability is ultimately established, is her negligent failure to supervise and control the child during the unloading of the vehicle at a place well removed from the insured's premises. . . . [¶] There is a complete absence of conduct on the part of the insured which is independent of and unrelated to the 'use' of the vehicle. The conduct of the insured which contributed to the injury simply cannot be dissociated from the use of the vehicle. Nor did the injury, insofar as the insured is concerned, involve an instrumentality other than the vehicle itself. [Citation.] This being so, the exclusion clause in the Farmers homeowners policy must be given effect." (*Id.,* at pp. 108-109.)

Next, in *State Farm Fire & Cas. Co.* v. *Kohl* (1982) 131 Cal.App.3d 1031 [182 Cal.Rptr. 720], the policyholder, while driving a truck, collided with a motorcycle, throwing the rider to the pavement. The insured then jumped from his truck and negligently dragged the motorcyclist from the street. The Court of Appeal for the Second District, Division Two, the same court that decided *National Indemnity,* concluded that "the *Partridge* case is indistinguishable in principle from the present case. In *Partridge,* the insured's use of the vehicle, as here, placed the victim in the position to be injured. The injury there, as

here, resulted directly from an independent negligent act. [The insured's] act of dragging [the motorcyclist] from the road was independent of and unrelated to his use of the vehicle even though his use of the vehicle placed the victim in a position which led to the additional injury." (*Id.*, at p. 1039.)

Finally, in *Allstate Insurance Co.* v. *Jones* (1983) 139 Cal.App.3d 271 [188 Cal.Rptr. 557], the insured, a construction contractor, owned a pickup truck equipped with a rack for steel reinforcing rods. In a collision with another vehicle the negligently loaded rods were ejected from the rack, striking and killing the other driver. Concluding that the acts which caused the death of the victim were auto-related, the court held that the standard exclusionary clause precluded coverage. The court noted that "[i]t is clear when reviewing the facts set forth in *Partridge, Glens Falls,* and *Kohl* that one of the negligent acts which occurred did not depend upon the use of an automobile and, thus, did not fall within the exclusionary clause. . . . [¶] . . . In contrast, the improperly loaded rebar depended on the truck's movement and velocity to become a hazard." (*Id.*, at p. 277.) Consequently, "only if the 'liability of the insured arises from his non-auto-related conduct, *and exists independently of any "use" of his car . . .*' (*State Farm Mut. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d at p. 103, italics added) will a general liability policy apply." (*Ibid.*; italics in original.)

The liability of the insureds here both arises from their auto-related conduct (entrustment of the motorcycle) and did not exist independently of any use of the motorcycle. Until their son incompetently operated and used the motorcycle and caused injury, no liability against the entrusters arose. "Under the theory of 'negligent entrustment,' liability is imposed on vehicle owner or permitter because of his own independent negligence and not the negligence of the driver, in the event plaintiff can prove that the injury or death resulting therefrom was proximately caused by the driver's incompetency." (*Syah* v. *Johnson* (1966) 247 Cal.App.2d 534, 539 [55 Cal.Rptr. 741].) While the Gilstraps may have joint responsibility for the injuries caused by Michael under general negligence principles based on the stated facts (see *Hartford Accident & Indemnity Co.* v. *Abdullah* (1979) 94 Cal.App.3d 81, 90-92 [156 Cal.Rptr. 254]), their homeowner's insurer does not. As we explained in a related context in *Transport Indemnity Co.* v. *Schnack* (1982) 131 Cal.App.3d 149, 152 [182 Cal.Rptr. 256], the insurance policy does not purport to regulate the theory of liability or the standard of causation, but only to specify the events upon which an otherwise covered liability is excluded (i.e., the "operation, use . . . of . . . any motor vehicle") and to broadly link them to the damage complained of by the phrase "arising out of." In short, when the events giving rise to the insured's liability are solely and indivisibly related to the use of an excluded instrumentality, coverage is precluded.

■ As the injury here involved no instrumentality other than the vehicle itself and as there would have been no accident without the use or operation of

the motorcycle, we hold a cause of action for negligent entrustment, under the facts presented, is expressly excluded under the terms of the policy.

Although there is no California case directly on point, numerous decisions from out of state have dealt with the relationship between negligent entrustment and exclusionary clauses. Although these courts are divided on the question whether a homeowner's exclusion clause precludes coverage for the negligent entrustment of a motor vehicle, the better view is that coverage is precluded.

In those cases which have held the exclusion clause did not preclude coverage, the courts have generally noted that the responsibility for "negligent entrustment" is founded not upon the negligence of the driver of the vehicle, but upon the primary negligence of the entruster in supplying a motor vehicle to an incompetent driver. (See *Douglass* v. *Hartford Ins. Co.* (10th Cir. 1979) 602 F.2d 934, 937-938; *Allstate Ins. Co.* v. *Reliance Ins. Co.* (1976) 85 Misc.2d 734 [380 N.Y.S.2d 923, 927]; *McDonald* v. *Home Ins. Co.* (1967) 97 N.J.Super. 501 [235 A.2d 480]; *Upland Mutual Insurance, Inc.* v. *Noel* (1974) 214 Kan. 145 [519 P.2d 737, 741].) Strictly construing the automobile exclusion provisions, these courts have held the entrustment was unrelated to the ownership, use, or operation of the vehicle and coverage was therefore not excluded. (See generally, *Upland Mutual Insurance, Inc.* v. *Noel, supra*, 519 P.2d at p. 741.)

A second line of decisions, however, holds an exclusion clause such as that provided in the instant homeowner's policy excludes coverage (as against a claim of negligent entrustment) when the facts are similar to those presented here. (See *Bankert* v. *Threshermen's Mut. Ins. Co.* (1981) 105 Wis.2d 438 [313 N.W.2d 854, 856-857]; *State Farm Fire & Cas. Co.* v. *McGlawn* (1980) 84 Ill.App.3d 107 [404 N.E.2d 1122, 1124]; *Lumbermens Mut. Cas. Co.* v. *Kosies* (1979) 124 Ariz. 136 [602 P.2d 517, 519]; *Barnstable County Mut. Fire Ins. Co.* v. *Lally* (1978) 374 Mass. 602 [373 N.E.2d 966]; *Cooter* v. *State Farm Fire & Cas. Co.* (Ala. 1977) 344 So.2d 496, 498-499; *Aetna Cas. & Sur. Co.* v. *Am. Mfrs. Mut. Ins. Co.* (1977) 261 Ark. 326 [547 S.W.2d 757, 758]; see generally, Annot., Construction and Effect of Provision Excluding Liability for Automobile-Related Injuries or Damage from Coverage of Homeowner's or Personal Liability Policy (1981) 6 A.L.R.4th 555.) In one such case the court noted that an essential element of recovery for negligent entrustment is the negligent operation of the vehicle itself. (*Cooter* v. *State Farm Fire & Cas. Co., supra*, 344 So.2d at p. 498.) Therefore, while liability (apart from coverage) for negligent entrustment is not conditioned upon the entruster's ownership or use of the vehicle, the concurrence of the negligent entrustment by the owner of the vehicle and its negligent use by the entrustee is essential to any recovery. (*Ibid.*) "It is the concurrence of these dual elements—negligent entrustment by the owner or custodian of the instrumentality plus its negligent

use by the entrustee—that is missing in the rationale of those cases upholding coverage. Taken literally, this line of reasoning—that negligent entrustment of the vehicle, and not its use, is the basis of insured's alleged liability—the injured party could recover absent any showing that the incompetent to whom the vehicle is entrusted caused the injury by his negligent use of the vehicle. As we have already observed, this does not comport with the elements that make up this tort concept of negligent entrustment." (*Id.*, at p. 499.)[5]

A similar conclusion was reached in *Bankert* v. *Threshermen's Mut. Ins. Co.* (1981) 105 Wis.2d 438 [313 N.W.2d 854, 857]: "While there is arguable merit in the logic that separates the two negligent acts by actor, the fact remains that entrustment of a vehicle is but a form of 'use.' The policy cannot be read to cover this 'use' of the motorcycle merely because the insurer did not list specifically the countless uses of a motorcyle." (313 N.W.2d at p. 857.)

Moreover, while a cause of action for negligent entrustment concerns itself primarily with the conduct of entrusting an instrumentality to another, a claim for negligent entrustment cannot be considered without an examination of the instrumentality itself. (*State Farm Fire & Cas. Co.* v. *McGlawn, supra,* 404 N.E.2d at p. 1124.) Where, as here, a specific exclusion in the policy exists as to the instrumentality, i.e., a motor vehicle, then, ipso facto, there can be no coverage on a claim based on negligent entrustment of that instrumentality. (*Ibid.*)

We are in agreement with those decisions which have upheld the exclusion clause against a claim of coverage based on circumstances similar to this case. ■ A cause of action for negligent entrustment requires a showing that defendant owned or controlled a vehicle and gave another permission to operate the vehicle. (*Lumbermens Mut. Cas. Co.* v. *Kosies, supra,* 602 P.2d at p. 519.) Thus, the concept of negligent entrustment "is not exclusive of, but, rather, is derived from the more general concepts of ownership, operation, and use of a motor vehicle. . . . [I]t would be illogical to conclude that the exclusionary clause pertaining generally to the 'ownership . . . operation, [or] use . . . of' a . . . motor vehicle does not apply specifically to the negligent entrustment of the vehicle . . . ." (*Barnstable County Mut. Fire Ins. Co.* v. *Lally, supra,* 373 N.E.2d at p. 969.)

Although we construe all provisions, conditions, or exceptions that tend to limit liability strictly against the insurer (*Phelps* v. *Allstate Ins. Co.* (1980) 106

---

[5]*Cooter* assumes a situation where the driver is negligent. Actually, there can be a situation where there is liability for negligent entrustment when there has been no negligence on the part of the driver. (See discussion in *Nault* v. *Smith* (1961) 194 Cal.App.2d 257, 269 [14 Cal.Rptr. 889].) However, in such situation the driver's operation or use of the vehicle is necessary before the tort or negligent entrustment arises. (*Lumbermens Mut. Cas. Co.* v. *Kosies, supra,* 602 P.2d at p. 519, fn. 1.)

Cal.App.3d 752, 758-759 [165 Cal.Rptr. 263]), strict construction does not mean strained construction. (See *McBride* v. *Farmers Insurance Exchange* (1982) 130 Cal.App.3d 258, 261 [181 Cal.Rptr. 539]; *Highlands Ins. Co.* v. *Universal Underwriters Ins. Co.* (1979) 92 Cal.App.3d 171, 175 [154 Cal.Rptr. 683].) We may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid. (*Bankert* v. *Threshermen's Mut. Ins. Co., supra,* 313 N.W.2d at p. 857.) " '[T]he test is not what the insurer intended its words to mean but what a reasonable person in the position of an insured would have understood the words to mean.' [Citation.] The insured contracted for homeowner's insurance. It cannot be argued that they thought they were purchasing automobile liability coverage. We hold that, strictly construed or not, this exclusionary language removes negligent entrustment of [a motor vehicle] . . . from the coverage of the policy." (*Ibid.*; accord, *Allstate Insurance Co.* v. *Jones, supra,* 139 Cal.App.3d at p. 278.)

Our conclusion, we are convinced, comports with reasonable expectation of the contracting parties. That expectation was best described in *Herzog* v. *National American Ins. Co.* (1970) 2 Cal.3d 192, 197 [84 Cal.Rptr. 705, 465 P.2d 841]: "The reasonable expectations of the insurer in a homeowner's policy—as additionally manifested in the type of information sought upon application for such a policy and the relatively small premiums charged—clearly do not contemplate coverage for automobile-related accidents which occur beyond this limited area. Nor do the reasonable expectations of the insured contemplate that his homeowner's policy will provide such extended automobile coverage; other insurance, with a premium commensurate to the increased risks, is available for that purpose, and . . . is customarily obtained by the homeowner. [¶] From the foregoing it clearly appears that neither the intent of the parties nor their reasonable expectations contemplate that the personal liability provisions of a homeowner's policy should provide coverage for automobile accidents occurring away from the immediate vicinity of the home. Thus, any construction of the policy which would provide such extended coverage would be contrary to the intent and reasonable expectations of both insurer and insured."

The judgment is reversed and the cause remanded to the trial court with directions to enter judgment in favor of Safeco.

Regan, Acting P. J., and Evans, J., concurred.

The petition of respondent Leverton for a hearing by the Supreme Court was denied June 1, 1983.