**UNITED STATES FIRE INSURANCE COMPANY, Plaintiff,**

v.

**Denise GANZ, et al., Defendants.**

**No. C–85–2400 SC.**

United States District Court,
N.D. California.

Nov. 22, 1985.

Coddington & Winters, Menlo Park, Cal., James P. Wagoner, James H. Wilkins, McCormick, Barstow, Sheppard, Wayte & Carruth, Fresno, Cal., for plaintiff.

William L. Garfield, Pursley & Garfield, Los Gatos, Cal., for B. Jack Elkin and Elkcam Air.

William F. Murphy, John N. Dahlberg, Dillingham & Murphy, San Francisco, Cal., for Ganz.

David A. Prestholt, O'Flaherty, Abrahams & Carl, Los Angeles, Cal., for Enviroscope Corp and Lars De Jounge.

James J. Keenan, Jr., Mercer, Gallagher & Zinder, Lafayette, Cal., for The Neptune Soc.

## ORDER RE MOTIONS FOR SUMMARY JUDGMENT

CONTI, District Judge.

Plaintiff United States Fire Insurance Company ("USFI") filed this declaratory relief action on March 19, 1985, to determine its rights and responsibilities under insurance policies issued to defendant Elkcam Air Services ("Elkcam"). On July 26, 1985, this court entered an order granting motions to intervene as plaintiffs submitted by United Pacific Insurance Company ("UPIC") and United States Fidelity & Guaranty Company ("USFG"). On October 11, 1985, this court entered an order granting in part defendants' motion to stay the instant action pending resolution of underlying state court actions.

The matter is presently before the court on motions for summary judgment submitted by USFI and UPIC.

This action arises out of the alleged commingling of cremated remains by Elkcam and/or defendant B. Jack Elkin (hereinafter collectively referred to as "Elkin"). Beginning in June, 1984, thousands of lawsuits were filed in state court against Elkin, defendant Neptune Society, and others seeking compensatory and punitive damages for fraud, breach of contract, civil conspiracy, intentional infliction of emotional distress, misrepresentation, breach of confidential relationship, tortious mishandling of corpse, improper burial, conversion of personal property, violation of the Constitutional Remedies Act, negligence, negligence per se, and violation of the Consumer Legal Remedies Act. USFI, UPIC, and USFG thereafter filed state declaratory relief actions seeking determinations of their liability as insurers of Elkin. The underlying state court actions were subsequently coordinated in the County of Sacramento under the title "The Neptune Society Cases Judicial Council Coordinated Proceedings Nos. 1814 and 1817." On September 19, 1985, the Court of Appeal for the State of California, Third District, stayed all actions concerning the coordinated proceedings until further notice.

On August 3, 1984, defendant Denise Ganz filed a lawsuit in the United States District Court for the Northern District of California entitled *Denise Ganz v. Neptune Society, et al.*, No. C–84–5430 EFL. On January 25, 1985, defendant Michael Ganz commenced an action in the same court entitled *Michael Ganz v. The Neptune Society, et al.*, No. C–85–1258 EFL. The Ganz lawsuits concern defendants' allegedly tortious handling of the remains of Denise Ganz' father. Briefly, the Ganz plaintiffs claim that Elkin "disseminated the remains of [Denise Ganz' father] by trucking [or flying] the same [from San Jose] to Amador County, [there] commingling the ashes with others, wheelbarrowing the mixture to a back lot, and dumping it on a pile containing ashes of hundreds of others." USFI's Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 3. The Ganz plaintiffs seek compensatory and punitive damages for negligence, tortious interference with decedent's remains, fraud, breach of contract, infliction of emotional distress, breach of the covenant of good faith and fair dealing, and loss of consortium. USFI, UPIC, and USFG subsequently filed declaratory relief actions with this court, again seeking a determination of their liability as insurers of Elkin.

USFI and UPIC now move for summary judgment on grounds that claims raised by the Ganz plaintiffs do not arise out of the "ownership, maintenance or use of," respectively, Elkin's aircraft or automobiles. Summary judgment is proper only where

there is no genuine issue of material fact or when, viewing the evidence in the light most favorable to the non-moving party, the movant is clearly entitled to prevail as a matter of law. *Bank of California, N.A. v. Opie,* 663 F.2d 977, 979 (9th Cir.1981); *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 (9th Cir.1980). Once a summary judgment motion has been made and properly supported, the adverse party may not rest on the mere allegations of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983); *Ruffin v. County of Los Angeles,* 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980).

Under California law, an insurance policy "is but a contract [that] ... must be construed from the language used and ... where ... its terms are plain and unambiguous, the courts have a duty to enforce the contract as agreed upon by the parties." *VTN Consolidated, Inc. v. Northbrook Insurance Co.,* 92 Cal.App.3d 888, 892, 155 Cal.Rptr. 172 (1979); *see also, State Farm Mutual Automobile Insurance Co. v. Ball,* 127 Cal.App.3d 568, 673, 179 Cal. 644 (1982). "An insurance company has the right to limit [, by plain language,] the coverage of a policy issued by it." *Apparel City Sewing Machine Co. v. Transamerica Insurance Group,* 129 Cal.App.3d 400, 405, 181 Cal.Rptr. 64 (1982); *see also, VTN Consolidated,* 92 Cal.App.3d at 892, 155 Cal.Rptr. 172. To protect the insured's reasonable expectation of coverage, however, insurance policies "must be strictly construed against the insurer and any ambiguity must be resolved in favor of coverage." *Truck Insurance Exchange v. Webb,* 256 Cal.App.2d 140, 144, 63 Cal.Rptr. 791 (1967); *see also, Reserve Insurance Co. v. Pisciotta,* 30 Cal.3d 800, 807, 180 Cal.Rptr. 628, 640 P.2d 764 (1982). Moreover,

"[t]he [insurers'] duty to defend [the insured in the event of a lawsuit] is broader than the duty to indemnify ... Where there is doubt as to whether the duty to defend exists, the doubt should be resolved in favor of the insured ..."

*Eichler Holmes, Inc. v. Underwriters,* 238 Cal.App.2d 532, 538, 47 Cal.Rptr. 843 (1965). Nonetheless, courts, "will not indulge in a forced construction so as to fasten a liability on the insurance company which it has not assumed." *Pacific Employers Insurance Co. v. Maryland Casualty Co.,* 65 Cal.2d 318, 323, 54 Cal.Rptr. 385, 419 P.2d 641 (1966) (citations omitted); *see also, Reserve Insurance,* 30 Cal.3d at 807, 180 Cal.Rptr. 628, 640 P.2d 764.

UPIC moves for summary judgment on grounds that the automobile insurance policy it issued to Elkin does not cover the injuries allegedly sustained by the Ganz plaintiffs. Pursuant to Cal.Ins.Code § 11580.1, the policy in question protects Elkin from liability pertaining to the 'ownership, maintenance or use' of his automobiles. UPIC argues that, "the injuries and damages alleged in [the Ganz actions] ... *do not arise out of the use,* including the loading and unloading, of any automobile." UPIC's Reply Memorandum in Support of Motion for Summary Judgment, p. 4. Upon review of the record, the court finds merit to UPIC's argument.

As the court noted in *Transport Indemnity Co. v. Schnack,* 131 Cal.App.3d 149, 152, 182 Cal.Rptr. 256 (1982),

"[t]he words 'arising out of the ownership, maintenance, or use of the ... [vehicle]' are not words of narrow and specific limitation, but are broad, general, and comprehensive terms effecting broad coverage ..."

Notwithstanding this general rule, courts recognize that "parties to an automobile liability policy do not contemplate a general liability insurance contract." *Webb,* 256 Cal.App.2d at 145, 63 Cal.Rptr. 791; *see also, Camay Drilling Co. v. Travelers Indemnity Co.,* 12 Cal.App.3d 237, 241, 90 Cal.Rptr. 710 (1970); *Pacific Indemnity Co. v. Truck Insurance Exchange,* 270 Cal. App.2d 700, 704, 76 Cal.Rptr. 281 (1969). Accordingly,

"[a]lthough the word 'use' must be given an all-inclusive connotation, there must

be a causal connection between the use and the injury ... The test for determining the existence of the requisite causal connection has been expressed in varying language. It has been stated that the resulting injury must be a 'natural and reasonable incident or consequence of the use of the [automobile] for the purposes shown by the declarations [to an insurance policy], though not foreseen or expected ...' and that the injury cannot be said to arise out of the use of an automobile 'if it was directly caused by some independent act, or intervening cause wholly disassociated from, independent of and remote from the use of the [automobile].' "

*Webb*, 256 Cal.App.2d at 145–146, 63 Cal. Rptr. 791 (citations omitted); *see also, Dillon v. Hartford Accident and Indemnity Co.*, 38 Cal.App.3d 335, 341, 113 Cal.Rptr. 396 (1974).

In *Webb*, a truckdriver transported a load of cardboard boxes in his employer's truck to a point west of some commercial buildings, unloaded them, and then ignited the boxes. The fire spread to the employer's building. The court denied the employer coverage under his automobile insurance policy, noting,

"although the use of the pick-up truck did play a part in the chain of events, it cannot be reasonaby said that the destruction of the buildings arose out of the 'use' of the vehicle. The conduct of [the truckdriver] in igniting the boxes and leaving the fire unattended was independent of and unrelated to the use of the truck. The use of the truck was neither a 'predominating cause' or a 'substantial factor.' "

*Id.*, 256 Cal.App.2d at 148, 63 Cal.Rptr. 791 (citations omitted).

In *Aetna Casualty & Surety Co. v. Safeco Insurance Co.*, 103 Cal.App.3d 694, 163 Cal.Rptr. 219 (1980), a young boy was injured when a gun accidentally went off inside the insured's truck. The insured's policy provided coverage for accidents arising out of use of the truck. Nonetheless, the court found against coverage, noting,

"It is well established that an automobile need not be the proximate cause of an injury in order for automobile liability coverage to apply within the meaning of that phrase ... Some minimal causal connection between the vehicle and an accident is, however, required."

*Id.* at 697, 163 Cal.Rptr. 219.

Finally, in *Interinsurance Exchange v. Macias*, 116 Cal.App.3d 935, 172 Cal.Rptr. 385 (1981), the insured drove his intoxicated son to a waiting car. His son was later involved in an accident while driving that car. The court found that the insured's policy did not cover injuries sustained in the accident, indicating,

"The scope of coverage of a vehicle liability policy is to be construed with regard to the intent and reasonable expectations of the insured ... Here transportation of passengers, drunk or sober, is an intended, normal and expected 'use' of a car. However, when [the insured's son] left [the insured's] vehicle, got into his own and then committed some negligent act of driving ..., his independent acts broke the 'causal' link between the 'use' of the insured vehicle and [the victim's] injuries."

*Id.* at 938, 172 Cal.Rptr. 385; *see also, Traveler's Insurance Co. v. Northwestern Mutual Insurance Co.*, 27 Cal.App.3d 959, 104 Cal.Rptr. 283 (1972) (injuries sustained when service station owner jacked up car to change tire did not arise out of use of vehicle); *State Farm Mutual Automobile Insurance Co. v. Cummings*, 21 Cal. App.3d 441, 98 Cal.Rptr. 320 (1971) (repair of brakes by garage not a use of vehicle for purposes of determining coverage under insurance policy); *compare, United Service Automobile Association v. United States Fire Insurance Co.*, 36 Cal.App.3d 765, 770, 111 Cal.Rptr. 595 (1973) (court denied coverage where victim was struck by a can of burning gasoline that had ignited while the insured's son was pouring gasoline into a carburetor. Court held that the insured's son was "clearly using the ... vehicle ... [The son's] actions in attempting to start the car constituted a

physical relationship to it and was present use performed for the purpose of making the vehicle operative.")

■ The Ganz plaintiffs allege injury resulting from the manner in which the remains of Denise Ganz' father were disposed. As Elkin describes the treatment of decedent's cremated remains,

> "ELKIN either transported the cremated remains ... from San Jose to his property in Amador county via airplane in which case he would [have] transport[ed] the remains from the airport to his property by automobile, or ... he ... transport[ed] the remains solely by automobile to his property ... Thereon he ... *'unload[ed]'* the remains from his auto. *'Following the removal'* of the remains *from the auto,* he ... walk[ed] at least thirty feet from the auto and deliver[ed] the remains to their *final resting place* by scattering them to the wind ... He ... then return[ed] to his auto and [left] his property ..."

Elkin's Memorandum of Points and Authorities in Opposition to UPIC's Motion for Summary Judgment, p. 9 (emphasis in original).

As UPIC notes,

> "The actual scattering of the remains [, the action upon which the Ganz plaintiffs base their claims,] took place after the remains were removed from [Elkin's automobile] ..., and occurred a considerable distance away from the automobile, i.e. 30 feet or more ... Clearly any automobile use was limited to the transportation of cremated remains. At no time were the packaged remains ever commingled and/or disturbed while they were being transported by automobile."

UPIC's Memorandum of Points and Authorities in Support of Motion for Summary Judgment, p. 3. Accordingly, as in *Webb, Aetna Casualty,* and *Macias,* Elkin's "act of scattering and/or commingling the cremated remains ... [lacked the requisite] causal link with the use of any automobile" for purposes of triggering coverage under UPIC's auto insurance policy. *Id.* at 14.

Elkin notes in response that "the unloading process is an included 'use' of the automobile" under the UPIC policy. Elkin Memorandum in Opposition to UPIC Motion, p. 9. Elkin argues that in disseminating the remains in question he was merely "unloading" his vehicle, and that the Ganz plaintiffs' alleged injuries thus resulted from the "use" of his automobile. The court finds Elkin's argument to be without merit. As Elkin notes,

> " 'unloading' [of a vehicle] has been completed when, following removal of the material from the vehicle, the deliveror has *finished his handling of it,* and it has been placed in the hands of the receivor at the designated reception point ..."

*Entz v. Fidelity & Casualty Co.,* 64 Cal.2d 379, 383, 50 Cal.Rptr. 190, 412 P.2d 382 (1966) (emphasis added). It is well established, however, that this so-called "complete operations" rule can be used to invoke insurance coverage only where "there is some causal relationship between the accident and the use of the vehicle." *Id.* Because Elkin has not established a sufficient causal connection between the act of scattering decedent's remains and use of his automobile, UPIC's motion for summary judgment must be granted.

■ USFI moves, next, for summary judgment on grounds that the claims asserted by the Ganz plaintiffs do not stem from the use of aircraft, and are thus not covered under the aircraft insurance policy that USFI issued to Elkin. The court finds merit to USFI's motion. "California courts have long looked to ... automobile cases in interpreting 'arising out of the use of' provisions in aircraft policies." USFI's Memorandum, p. 8. As the court noted in *Schnack,* 131 Cal.App.3d at 152, 182 Cal. Rptr. 256,

> "it has been judicially recognized that [in drafting liability policies,] the aircraft insurance industry apparently drew upon the experience of the automobile industry, for generally the aircraft policies have a coverage analogous to the bodily injury and property damage liability in

automobile policies, and, when desired, a coverage analogous to collision coverage in such policies . . . Since the policy here is phrased in terms common to automobile policies, it is appropriate to look to anologous automobile coverage cases." (citations omitted).

The USFI policy at issue expressly limited Elkin's coverage to damages "caused by an occurrence and arising out of the ownership, maintenance or use of the aircraft." Declaration of Daniel W. Winters in Support of USFI's Motion for Summary Judgment, Exhibit 5, p. 1. As noted earlier, a given injury does not "arise out of use of" automobiles or aircraft unless there is some causal connection between that use and the injury. Even if Elkin used his airplane to fly the remains of Denise Ganz' father from San Jose to Amador County, he eventually scattered those remains at least ten miles from the Amador County airport. Moreover, the remains in question were not commingled in the aircraft. Winters Declaration, Exhibit 2. As such,

"[t]o suggest that Elkin's abuse of [decedent's] remains after their removal from the aircraft, their placement in an automobile, their transport in the automobile 10 miles, their removal from the automobile and their hand carriage [at least thirty feet] onto Elkin's property is somehow a part of the unloading [and, hence, 'use'] of the aircraft is absurd at best."

USFI's Reply Memorandum in Support of Motion for Summary Judgment, p. 3. Accordingly, the court grants USFI's motion for summary judgment. Because the court grants USFI's motion on grounds that the Ganz plaintiffs' injuries did not arise from the use of aircraft, the court does not address the merits of USFI's remaining arguments for summary judgment.

The court is cognizant of arguments that Elkin and defendant Enviroscope Corporation make to the effect that USFI and UPIC agreed to provide coverage for the Ganz plaintiffs' claims by reason of the conduct of one Bill Barden, Elkin's insurance agent. The court rejects this argument. First, Elkin and Enviroscope present no evidence suggesting that Barden acted as USFI and UPIC's agent in obtaining insurance for Elkin. Moreover, "no defendant has raised this as an affirmative defense in [an] . . . answer." UPIC's Reply Memorandum, p. 14.

In accordance with the foregoing, it is hereby ordered that:

(1) UPIC's motion for summary judgment is granted; and

(2) USFI's motion for summary judgment is granted.