[No. G008017. Fourth Dist., Div. Three. July 27, 1990.]

RELIANCE INSURANCE COMPANY, Plaintiff and Respondent, v. COLIN ALAN et al., Defendants and Appellants.

**COUNSEL**

O'Connor & Schmeltzer, Lee P. O'Connor, Cummins & White and Richard J. Wynne for Defendants and Appellants.

Mower, Koeller & Nebeker and Lynn M. Bouslog for Plaintiff and Respondent.

**OPINION**

**MOORE, J.**—Colin Alan and Patricia Knobloch appeal the granting of summary judgment in a declaratory relief action decreeing Reliance Insurance Company (Reliance) had no duty to defend or indemnify Alan in an underlying civil action, and awarding Reliance reimbursement of all amounts it expended in Alan's defense. Alan and Knobloch contend the lower court erred in ruling Reliance had no duty to defend or indemnify Alan. In addition, Alan argues Reliance was not entitled to reimbursement for its costs of defense.

FACTS

The facts are not in dispute. In September 1986, Janet Knobloch, the daughter of appellant Knobloch, was living with Alan on his vessel, inaptly named "Tranquility." Reliance had issued an "All-Risk Yacht Policy" of insurance on the vessel, which contained "Protection and Indemnity"

coverage. It provided the company would pay on behalf of its insured all sums which the insured was legally obligated to pay "as a result of the ownership, operation, or maintenance of your insured property."

On September 24, 1986, when the "Tranquility" was berthed in Newport Harbor, Janet Knobloch was shot and killed aboard the vessel. Thereafter, Knobloch filed a complaint against Alan alleging causes of action for the wrongful death of her daughter, as well as intentional and negligent infliction of emotional distress.[1]

Following service of the complaint, Reliance tendered a defense to Alan under a full reservation of rights. Thereafter, Reliance moved for summary judgment, contending it had no obligation to defend or indemnify Alan in the Knobloch action, because the liability did not result from the "ownership, operation or maintenance" of the insured vessel. It also contended it was entitled to reimbursement of all sums expended on Alan's defense. Alan and Knobloch opposed the motion, contending the shooting arose, in part, from Alan's ownership of the vessel. The lower court granted Reliance's motion and entered judgment on behalf of Reliance, and this appeal followed.

## DISCUSSION

### STANDARD OF REVIEW

As noted, the facts before the lower court are not in dispute. Rather, the parties dispute the legal conclusions to be drawn from those facts, under the terms and conditions of the insurance policy issued by Reliance to Alan. Accordingly, this court is not bound by the lower court's construction of the insurance policy. (*Merrick* v. *Writers Guild of America, West, Inc.* (1982) 130 Cal.App.3d 212, 217 [181 Cal.Rptr. 530].) The proper interpretation of the policy is subject to de novo review. (*Los Angeles Police Protective League* v. *City of Los Angeles* (1985) 163 Cal.App.3d 1141, 1148 [209 Cal.Rptr. 890], disapproved on other grounds in *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376, 427, fn. 28 [253 Cal.Rptr. 426, 764 P.2d 278]; *Titan Group, Inc.* v. *Sonoma Valley Sanitation Dist.* (1985) 164 Cal.App.3d 1122, 1127 [211 Cal.Rptr. 62].)

---

[1] Knobloch's complaint alleged the shooting occurred either negligently or intentionally. In its complaint for declaratory relief, Reliance alleged Alan acted in "an intentional and/or willful manner." However, in the motion for summary judgment and the briefs on appeal, the parties focus solely on the question of whether there is a duty to defend because the shooting arose out of the ownership of the vessel. Accordingly, it is unnecessary for us to speculate as to how the shooting occurred or whether Alan intentionally or negligently fired the weapon.

We are bound by established rules governing the construction of insurance policies. ■ Any ambiguity or uncertainty in the policy must be resolved against the insurer, and the insured's reasonable expectations of coverage must be protected. (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764].) For this reason, coverage clauses are interpreted broadly so as to afford the greatest possible coverage, while exclusionary clauses are interpreted narrowly against the insurer. (*Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 406 [257 Cal.Rptr. 292, 770 P.2d 704]; *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 101-102 [109 Cal.Rptr. 811, 514 P.2d 123].) It is the insurer's burden to phrase exceptions and exclusions in clear and unmistakable language. However, as with all contracts, when the terms are plain and unambiguous, the court is bound to enforce the language of the policy as written. (*Atlas Assurance Co.* v. *McCombs Corp.* (1983) 146 Cal.App.3d 135, 143 [194 Cal.Rptr. 66].) " 'When the language is clear, a court should not give it a strained construction to impose on the insurer a liability it has not assumed.' " (*St. Paul Fire & Marine Ins. Co.* v. *Superior Court* (1984) 161 Cal.App.3d 1199, 1202 [208 Cal.Rptr. 5].)

Applying these rules of construction, we proceed to the merits.

### APPLICABILITY OF THE YACHT POLICY

■ The issue is whether the "Protection and Indemnity" provision of the all-risk yacht policy provides coverage for the damages, including wrongful death, alleged in Knobloch's complaint. The controlling provision states: "Perils Insured Against: We will pay sums which you or a covered person under this Policy becomes legally obligated to pay as a result of the ownership, operation, or maintenance of your insured property because of: [¶] A. Property Damage . . . [¶] B. Personal Injury . . . ." Accordingly, to fall within the scope of coverage under the policy, the insured's liability must have arisen out of the "ownership, operation or maintenance" of the insured vessel.

The subject policy is not a comprehensive general liability policy. It is well recognized that a "Protection and Indemnity" coverage policy is of a limited nature: "An important feature of the P&I policy is that it only covers liabilities incurred 'as owners of the [insured] vessel.' It is not a general liability coverage, and when the insured vessel owner's conduct in some non-vessel-related operation is the cause of an injury, even one occurring on the owner's vessel, the loss is not covered since the owner's liability was not incurred as a vessel owner." (3 Cal. Insurance Law & Practice, Marine Insurance, § 44.04[4], p. 44-14.)

No California case that we have been able to find has dealt with this or a similar set of facts. However, the limited nature of a "Protection and Indemnity" policy was explained by the Fifth Circuit Court of Appeals in *St. Paul Fire & Marine Ins. Co.* v. *Vest Trans.* (5th Cir. 1982) 666 F.2d 932, 941, as follows: "It must be stressed initially that protection and indemnity policies do not purport to cover all types of an insured's liability but extend only to the liabilities specifically enumerated in the insuring agreement." (See also *Bohemia, Inc.* v. *Home Ins. Co.* (9th Cir. 1984) 725 F.2d 506, 509.)

Similarly, in *Lanasse* v. *Travelers Insurance Company* (5th Cir. 1971) 450 F.2d 580, 584, the Fifth Circuit noted the vessel must afford something more than a mere condition or locale for the accident: "There must be at least some causal operational relation between the vessel and the resulting injury . . . . [W]here injury is done through nonvessel operations, the vessel must be more than the inert locale of the injury."[2] (See also *Wedlock* v. *Gulf Mississippi Marine Corp.* (5th Cir. 1977) 554 F.2d 240, 243-244.) In the instant case, there is no question the vessel was docked in Newport Beach when the incident occurred and merely served as the locale for the incident.

When the insured vessel owner's conduct is the cause of an injury in a nonvessel-related act, even when occurring on the owner's vessel, the loss is not covered. (*Lanasse* v. *Travelers Insurance Co., supra*, 450 F.2d at p. 584; *Wedlock* v. *Gulf Mississippi Marine Corp., supra*, 554 F.2d at p. 242; *St. Paul Fire Ins.* v. *Vest Transportation, supra*, 666 F.2d at p. 941.)

Appellant cites *Farmers Home Mut. Ins. Co.* v. *Insurance Etc.* (1978) 20 Wash.App. 815 [583 P.2d 644] in support of coverage. But there, the Washington Court of Appeals allowed recovery because injuries were suffered while the insured was helping the injured party disembark, and "all parties were involved in activities necessary to properly leave the yacht at the end of a cruise." (*Id.* at p. 647.)

Inasmuch as the language of the policy is clear and unambiguous, the cases cited by appellants regarding coverage arising out of "use" or "operation" are inapposite. For example, in *Transport Indemnity Co.* v. *Schnack* (1982) 131 Cal.App.3d 149 [182 Cal.Rptr. 256], an aircraft policy provided coverage for damages caused by an occurrence arising out of the ownership, maintenance or *use* of the aircraft. Under that insuring agreement, the court

---

[2] Appellant Knobloch argues *Lanasse* and *Vest* are inapposite because the contractual provisions were not similar to those present here. We disagree. In *Lanasse*, the policy provided coverage for liability incurred "as owner of" the insured vessel. (450 F.2d at p. 584.) In *Vest*, the coverage was for liability incurred "*as owners of the vessel named herein* . . . ." (666 F.2d at p. 937.) The ownership coverage was thus substantially similar to that provided here.

concluded coverage existed for the insured's liability arising out of an explosion which occurred during the fueling of the aircraft. (*Id.* at pp. 152-153.) In the instant case, the yacht policy did not include coverage for liability arising out of the insured's "use" of the vessel. Further, it is clear there was no "causal operational relationship" between the insured vessel and the shooting death of Janet Knobloch.

Similarly, in *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, the court construed a homeowner's policy which excluded coverage for bodily injuries " 'arising out of the . . . use . . . of the owned motor vehicle.' " (*Id.* at p. 98.) Here, the policy affords limited coverage for liability arising out of the "ownership, operation or maintenance" of the insured vessel, but does not encompass liability arising out of "use."

Finally, in *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra,* 10 Cal.3d 94, the court recognized a "causal connection" between a vehicle and a shooting incident, because a firearm accidentally discharged as the vehicle was being driven off-road in rough terrain on a hunting trip. (*Id.* at p. 100.) By contrast, in the instant case, the insured vessel was moored at its berth at the time of the fatal shooting. Thus, the insured vessel served merely as the locale of the shooting and there was no "causal relationship" between the boat and the shooting which would trigger coverage under the "Protection and Indemnity" policy.

For these reasons, we hold Reliance did not have a duty to defend or indemnify Alan in the underlying action and affirm that portion of the lower court's judgment for Reliance. Having so concluded, we must determine whether the lower court properly decided Reliance was entitled to reimbursement of defense costs expended on Alan's behalf.

### REIMBURSEMENT OF ATTORNEY'S FEES AND COSTS

The lower court ordered Alan to reimburse Reliance for $5,818.05 in costs of defense in the Knobloch action. We reverse that portion of the judgment.

Reliance contends it was entitled to reimbursement as a matter of law, since it had no duty to defend or indemnify Alan. It argues that, because he received the benefit of a defense Reliance was not obligated to provide, Alan must reimburse Reliance for the costs of defense. We disagree.

Reliance complied with Alan's demand for a defense and tendered it under a reservation of rights, reserving the right to seek reimbursement of monies expended in Alan's defense: "Additionally, we are reserving our

right to seek reimbursement of the amount plus interest of attorneys' fees and costs should it later be determined that [Reliance] has no duty to defend or indemnify the named insureds." The record indicates this was the only "undisputed fact" relied upon by Reliance in its motion for summary judgment for the proposition it was entitled to reimbursement of defense costs as a matter of law.

Reliance's claim for reimbursement was based solely on a theory of equitable restitution. The second cause of action in the complaint alleges the sums for Alan's defense were paid "under legal compulsion" and that plaintiff "is entitled to *restitution* of all such sums in order to avoid the *unjust enrichment* of defendant Colin Alan." (Italics added.) The theory of equitable restitution has been uniformly rejected under similar circumstances in California. (See, e.g., *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308, 1323 [241 Cal.Rptr. 427]; *Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 203-204 [231 Cal.Rptr. 791]; *American Oil Service* v. *Hope Oil Co.* (1961) 194 Cal.App.2d 581, 586 [15 Cal.Rptr. 209].) The reason is as follows: "Among settled principles of restitution is that a person who, incidental to the performance of his own duty or to the protection of his own things, has conferred a benefit upon another, is not thereby entitled to contribution. [Citation.] The insurer who is uncertain whether coverage is provided under a policy undertakes the defense of its insured under a reservation of rights in large part to protect *itself* from a subsequent claim that it breached its agreement with the insured. [Citation.] Although the assumption of the defense by the insurer without doubt also benefits the insured, it is not primarily undertaken for the insured's benefit." (*Travelers Ins. Co.* v. *Lesher, supra*, 187 Cal.App.3d at pp. 203-204.)

Reliance cites the cases of *Johansen* v. *California State Auto Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9 [123 Cal.Rptr. 288, 538 P.2d 744] and *Aetna Cas. & Surety Co.* v. *Certain Underwriters* (1976) 56 Cal.App.3d 791 [129 Cal.Rptr. 47] for the proposition that an insurer is entitled to recover its attorney's fees and costs of defending an insured when it is later determined the insurer had no duty to defend or indemnify. Both cases, however, appear to be based on contractual, not restitutional, theories.

In *Johansen,* the court states that if an insurer has reserved its right to assert a defense of noncoverage and subsequently settles the case, it would be free to seek reimbursement of the *settlement payment* from its insured when noncoverage under its policy is established. This appears to be dictum in the case.[3] Furthermore, there is no discussion whatsoever regarding the

---

[3]Moreover, California law is clear that to seek reimbursement of settlement monies from the insured, the insurer must prove the existence of an agreement—express or implied in fact—that the insurer may commit the insured's own funds toward any reasonable

recovery of attorney's fees and costs in defending the insured. In *Aetna Cas. & Surety Co.,* the action was by a primary insurer against excess insurers for equitable subrogation. Thus, the issue was whether the primary insurer was entitled by subrogation or otherwise to recover costs of litigation expended for the insured from the excess insurance carriers. As a subrogee, the primary insurer was entitled to reimbursement as a matter of contract, because it had been placed in the shoes of the insured. (56 Cal.App.3d at pp. 801-804.)

Thus, the only theory for recovery of defense costs would be an agreement or understanding between Alan and Reliance that Alan would reimburse Reliance. Whether an agreement existed or not would be a question of fact. There was no such agreement contained in the policy of insurance here. And as noted, in its complaint and its motion for summary judgment, Reliance relied solely on the theory of equitable restitution.[4]

## DISPOSITION

The portion of the judgment holding that Reliance is entitled to recover costs and attorney's fees is reversed. In all other respects, the judgment is affirmed. The parties shall bear their own costs on appeal.

Wallin, Acting P. J., and Crosby, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 11, 1990.

---

settlement. (See *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576, 588 [126 Cal.Rptr. 267].)

[4]We note that Reliance has argued this case as if there was a contract between the parties for reimbursement of costs of defense. Even assuming Reliance had alleged such a contract in the lower court, it did not produce supporting documents or evidence to establish there is no triable issue of fact. (Code Civ. Proc., § 437c, subd. (c); *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) Moreover, it would be essential that the agreement comply with all the elements necessary for the formation of a valid contract. So, it would be essential that the agreement be supported by sufficient consideration, separate and apart from that which supported the initial insurance contract. To the extent the quotation in footnote 5 in *Insurance Co. of the West* v. *Haralambos Beverage Co., supra,* 195 Cal.App.3d at pages 1319-1320 states otherwise, we disagree with it and that opinion's implicit endorsement.