[Civ. No. 22451. Third Dist. Nov. 1, 1983.]

OHIO CASUALTY INSURANCE COMPANY, Plaintiff and Appellant, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant and Respondent.

642

COUNSEL

Donahue & Callaham, James R. Donahue and William C. Callaham for Plaintiff and Appellant.

Ericksen, Arbuthnot, McCarthy, Kearney & Walsh and Douglas M. Kilduff for Defendant and Respondent.

OPINION

**CARR, J.**—In this action for declaratory relief between two insurance carriers we confront yet another dispute whose origin may be traced to *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]. The question presented is whether one or both of two insurance policies, i.e., a homeowner's policy with personal liability cov-

erage and a yacht policy with coverage for bodily injury, cover a particular injury. The trial court found the homeowner's policy, issued by defendant Hartford Accident and Indemnity Company (Hartford) to Geoffrey Daly (Daly), did not provide coverage for an accident allegedly caused by Daly's negligent supervision of a passenger on his boat. We disagree and shall reverse.

FACTS

On July 27, 1979, Louise Diepenbrock (Diepenbrock) and other students attending a Jesuit High School summer session were on an outing at Folsom Lake. They were passengers on a 1978 Sea Ray boat owned and operated by Daly, a parent of one of the students. In addition to Daly, the students were accompanied by Michael McIntee and Michael Melanson, both teachers at Jesuit.

In the afternoon the Sea Ray was in the middle of the lake; the engine was turned off and the boat still. Diepenbrock inquired whether there was time for a final swim, and Daly replied there was. Diepenbrock dove from the Sea Ray. When she surfaced from her dive she was run over by a boat operated by McIntee towing Melanson on water skis. As a result of the accident, Diepenbrock suffered severe and permanent injuries.

Diepenbrock filed suit in Sacramento Superior Court, naming Daly as a defendant in the action. Two theories of liability were asserted against Daly. The first was negligent maintenance and operation of the Sea Ray. The second theory of liability, with which this appeal is concerned, alleged Daly negligently supervised and controlled Diepenbrock in allowing her to dive from the Sea Ray into the lake.

Ohio Casualty Insurance Company (Ohio Casualty) had issued a yacht policy to Daly covering the Sea Ray. Both the yacht policy and Daly's homeowner's policy had liability limits of $300,000. Both policies were in effect on the date of the accident.

Pursuant to the terms of its policy, Ohio Casualty provided Daly a defense in the Diepenbrock litigation. During the course of that litigation, Ohio Casualty notified Hartford of the pending litigation, and advised Hartford of Ohio Casualty's opinion that Hartford had obligations of its own to Daly under the homeowner's policy. Hartford refused, however, to provide Daly a defense or any coverage whatsoever for Diepenbrock's claims.

Ohio Casualty paid its policy limits to Diepenbrock in exchange for the dismissal of Daly from the lawsuit. Ohio Casualty then filed this declaratory

relief action against Hartford, seeking reimbursement for one-half the cost of defending Daly and securing his release from the Diepenbrock suit.

Both Hartford and Ohio Casualty moved for summary judgment. Hartford asserted it owed Daly neither a defense nor indemnity for any claim arising from the boating accident, relying on a provision in the homeowner's policy which excluded coverage for bodily injury arising out of the use or operation of a watercraft. Ohio Casualty sought summary judgment on the theory the settlement with Diepenbrock was based solely on Daly's alleged negligence in supervising Diepenbrock's swimming and diving activities, a basis of liability not within the exclusionary clause. The trial court agreed with Hartford and found the watercraft exclusion applicable. Ohio Casualty appeals from the ensuing judgment.

## DISCUSSION

■ The parties agree, and the trial court so found, that the facts of this case are undisputed. Accordingly, the interpretation of the exclusionary clause in Hartford's policy is a question of law upon which we must make our own independent determination. (*Hartford Fire Insurance Co. v. Superior Court* (1983) 142 Cal.App.3d 406, 413 [191 Cal.Rptr. 37].) ■ In doing so we apply the established rule that "[w]hereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer." (*State Farm Mut. Auto. Ins. Co. v. Partridge, supra,* 10 Cal.3d at pp. 101-102.)

Under the coverage clause of Hartford's policy, it agreed to pay on behalf of Daly "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, . . . caused by an occurrence." "Occurrence" is broadly defined as "an accident, . . . which results, . . . in bodily injury or property damage." The policy further provides in bold print "EXCLUSIONS" as follows: "This policy does not apply: . . . [¶] a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of: . . . any watercraft: [¶] (1) owned by or rented to any Insured if the watercraft has inboard or inboard-outboard motor power of more than 50 horsepower or is a sailing vessel . . . ."

Neither party has cited this court to any cases construing such an exclusion for watercraft-related activities. There are, however, a plethora of cases considering the analogous situation wherein a homeowner's policy excludes coverage for automobile-related accidents. We consider it appropri-

ate to look to those cases for guidance. (See *Transport Indemnity Co.* v. *Schnack* (1982) 131 Cal.App.3d 149, 152 [182 Cal.Rptr. 256].)

The fundamental principle upon which this case turns was set out in *State Farm Mut. Auto. Ins.* v. *Partridge, supra,* 10 Cal.3d 94. In *Partridge,* the insured negligently filed down the trigger mechanism of a weapon to produce " 'hair trigger action.' " (*Id.*, at p. 97.) While hunting rabbits from a vehicle, the insured drove the vehicle off the road, hit a bump and the gun discharged, hitting a passenger. (Pp. 97-98.) The issue presented was whether coverage was provided solely by the insured's automobile policy, or also by his homeowner's policy, which contained an exclusion for " 'bodily injury . . . arising out of the . . . use of . . . any motor vehicle.' " (P. 99.)The court held there was coverage under the homeowner's policy despite the exclusion because the accident was *jointly* caused by an insured risk (the filing of the trigger mechanism) and an uninsured risk (the negligent driving). Where two such separate and independent risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy. (P. 102; see *Atlas Assurance Co.* v. *McCombs Corp.* (1983) 146 Cal.App.3d 135, 147 [194 Cal.Rptr. 66].) Accordingly, "the fact that an accident has been found to 'arise out of the use' of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within a similarly worded exclusionary clause of a homeowner's policy." (*Partridge, supra,* 10 Cal.3d at p. 102.)

Ohio Casualty contends this case is analogous to *Partridge.* They urge Daly was sued on two theories. The first was that Daly " 'negligently and unlawfully entrusted, maintained, controlled and operated said vessels on said river . . . ' " While this negligent act may have been excluded by the Hartford policy, Ohio Casualty relies on the second theory of liability asserted against Daly, that he " 'negligently supervised, directed and managed said *bathing and recreational activities* as to proximately cause the vessel operated by . . . McIntee . . . to strike and run over [Diepenbrock] . . . .' " (Italics added.) ■ Ohio Casualty urges this negligent supervision was a separate and independent cause of the accident, unrelated to Daly's use of the boat. We agree.

The present case is distinguishable from those progeny of *Partridge* wherein a negligent use of the excluded instrumentality was the cause of the injury. In *State Farm Fire & Cas. Co.* v. *Camara* (1976) 63 Cal.App.3d 48 [133 Cal.Rptr. 600], we held that the negligent design and construction of a dune buggy by the insured (a covered risk) was not independent of the negligent operation or use of the vehicle (the excluded risk) because "the

*only* way in which plaintiff could have been exposed to the claimed design risk was through the operation or use of the motor vehicle." (*Id.*, at p. 55; italics in original.) Similarly, in *Safeco Insurance Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524, 526 [190 Cal.Rptr. 425], the insureds were alleged to have negligently entrusted a motorcycle to their son. In holding the motor vehicle exclusion in the homeowner's policy applicable, we concluded that liability for negligent entrustment of the vehicle could not exist independently of its use. "Until their son incompetently operated and used the motorcycle and caused injury, no liability against the entrusters arose." (*Id.*, at p. 530; see also *Hartford Fire Insurance Co.* v. *Superior Court, supra*, 142 Cal.App.3d at p. 415 [negligent pre-flight planning dependent on use of aircraft]; cf: *Atlas Insurance Co.* v. *McCombs Corp., supra*, 146 Cal.App.3d at p. 148 [liability for negligent hiring of a thief dependent upon his theft].)

In the present case, however, the excluded instrumentality did not play an active role in causing the injury. The only "use" of the boat was to transport Diepenbrock and Daly to the scene of the accident. Once there, the boat's engine was turnedoff and it became nothing more than a floating dock or platform. The alleged negligent act was not simply using this platform for diving, because the dive itself did not cause the injury; rather, it was Daly's alleged negligence in failing to survey the surrounding area and in permitting Diepenbrock to enter the water when McIntee's boat was, from all appearances, dangerously near. Such negligence on Daly's part was not in any way dependent on the use of the boat before liability would arise. His liability for his acts would be unaffected whether the acts occurred on a boat, a pier or on the shore. That they occurred on the boat is fortuitous. For example, if the facts of this case were unchanged, except that Daly and Diepenbrock had been standing on the shore of the lake when the ill-advised permission to swim was granted, the insurer could not contest that the resultant damage would be covered by the homeowner's policy. (See *State Farm Mut. Auto. Ins. Co.* v. *Partridge, supra*, 10 Cal.3d at p. 103.) Hartford is attempting to avoid liability simply because the situs of Daly's allegedly negligent conduct was a boat. *Partridge* teaches that this coincidence cannot defeat the insurer's obligation to indemnify the insured for liability arising from nonwatercraft risks. (*Ibid.*)

*National Indemnity Co.* v. *Famers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 [157 Cal.Rptr. 98], upon which Hartford relies, does not compel a different result. There, the insured had driven her five- or six-year-old nephew to his home and parked across the street from the residence. While the insured was preparing to exit the vehicle, her nephew exited on the passenger's side, and ran in front of the car into the street.

There he was struck by another vehicle. (*Id.*, at pp. 104-105.) The court held the exclusion for use of a vehicle in the insured's homeowner's policy was applicable because the negligence was the insured's "failure to supervise and control the child during the unloading of the vehicle . . . ." (*Id.*, at p. 108.) Hartford contends the reasoning applied in *National Indemnity* compels affirmance of the instant judgment. We disagree.

The basis of the decision in *National Indemnity* was the trial court's factual finding that the injury occurred when the child " 'had not yet completed alighting from the vehicle . . . .' " (*Id.*, at p. 105.) The vehicle exclusion in the homeowner's policy in that case was for " 'bodily injury . . . arising out of the ownership, maintenance, operation, use, *loading or unloading* of any motor vehicle owned or operated by . . . the insured. . . .' " (*Id.*, at p. 106; italics added.) The court concluded that negligence in supervising the *unloading* of the car could not be dissociated from the use of the vehicle. (*Id.*, at pp. 108-109.) Given the factual finding in *National Indemnity*, this reasoning is sound. Since the loading and unloading of passengers is itself a "use" of the vehicle, the only way liability can arise from such loading or unloading is through the "use" of the vehicle. The covered risk (negligent supervision of unloading) is therefore dependent upon the excluded risk (use of the vehicle). The result in *National Indemnity* proceeds from, and relies on, the analysis in *Camara*. (*Id.*, at pp. 108-109.) Accordingly, the present case is distinguishable from *National Indemnity* for the same reason it is distinguishable from *Camara*.

Daly's negligence was not an act of omission in failing to supervise some aspect of the operation of the boat, such as loading or unloading, but was an act of commission in permitting Diepenbrock to go swimming when it was unsafe to do so. Unlike *National Indemnity*, the negligent supervision of Diepenbrock's swimming activities did not in itself constitute a use of the boat. The trial court specifically found "[t]here is no relationship between the boat itself and the act causing the injury, except that it was the situs of Daly's act or omission . . . ." Since the facts in the present case reveal that Daly was negligent in a respect other than supervising some *use* of the excluded instrumentality (i.e. unloading), *National Indemnity* is inapposite.[1] The trap into which both Hartford and the trial court fell is that the mere fact Daly's negligent act is *connected* to the use of the boat does not mean it is *dependent* on the use of the boat. In *National Indemnity*, no liability for negligently supervising the unloading of the vehicle could arise

---

[1]That Daly's alleged negligence involved something other than the "loading or unloading" of the boat is critical because the instant exclusion, just as in *National Indemnity*, precluded coverage for "bodily injury . . . arising out of the ownership, maintenance, operation, use, *loading or unloading* of . . . any watercraft." (Italics added.)

without a use of the vehicle. Here, liability for negligently supervising a swimmer can (and did) arise without any use of the excluded watercraft.[2]

We have concluded that Daly's negligent supervision of Diepenbrock's swimming was separate and independent of any use of the excluded watercraft because there were many ways and places such conduct could have given rise to liability without use of the boat, even though in the instant case it was a use of the boat which actually placed the victim in the position which led to the injury. In *State Farm Fire & Cas. Co.* v. *Kohl* (1982) 131 Cal.App.3d 1031, 1034 [182 Cal.Rptr. 720], the insured turned his pickup truck into the path of a motorcycle being driven by Nancy Kohl. Kohl collided with the truck. The insured then alighted from the truck and dragged Kohl from the street in a manner which Kohl alleged caused serious additional injury. (*Ibid.*) Relying on *Partridge,* the court held there was coverage under the homeowner's policy, despite the automobile exclusion, because the independent negligent act of dragging Kohl was a concurrent proximate cause of the injury, even though a use of the vehicle placed the victim in the position to be injured. (*Id.*, at p. 1039.)

Similarly, Hartford may not rely on the fact a watercraft was used to place the victim at the scene of the accident to avoid its agreement to insure Daly against nonwatercraft-related risks. Daly's negligence in supervising Diepenbrock's swimming activities was such a covered risk. The trial court erred in relieving Hartford of its obligation merely because the negligence occurred while Daly was on a boat.

The judgment is reversed.

Blease, Acting P. J., and Sims, J., concurred.

A petition for a rehearing was denied November 30, 1983, and respondent's petition for a hearing by the Supreme Court was denied February 16, 1984.

---

[2]It follows from our conclusion that the unloading of a vehicle is dependent upon a use of the vehicle, that negligence in loading or supervising the loading of a vehicle is also dependent upon a use of the vehicle. For this reason, *Allstate Insurance Co.* v. *Jones* (1983) 139 Cal.App.3d 271 [188 Cal.Rptr. 557] is of no solace to Hartford. That case involved the negligent loading of steel rebar onto a truck. The rebar was ejected from its rack on the truck by a collision with another vehicle. The rebar crashed into the passenger compartment of the other vehicle, killing the driver. (*Id.*, at p. 273.) The court held the insured's negligence in loading the rebar onto the truck was dependent upon his use of the truck. (*Id.*, at p. 277.)