[No. C005072. Third Dist. July 20, 1990.]

STATE FARM FIRE & CASUALTY CO., Plaintiff and Appellant,
v.
FRANK SALAS et al., Defendants and Respondents.

COUNSEL

McDonald, Saeltzer, Morris, Creeggan & Waddock, Eugene W. Saeltzer, William O. Morris, J. Martin McAllister, Matheny, Poidmore & Sears and Michael A. Bishop for Plaintiff and Appellant.

Blackman & Blackman, David M. Blackman, Dana, Dehart & Price, Dehart & Chaffin, Peter A. Sapunor, A. Jeffrey Dehart, William Chaffin, Porter, Scott, Weiberg & Delehant and Jesse M. Rivera for Defendants and Respondents.

OPINION

DAVIS, J.—Plaintiff State Farm Fire & Casualty Co. (State Farm) appeals from the trial court's judgment in favor of defendants Frank Salas (insured), Louis and Carol Molteni, and Nationwide Industries, Inc.[1] State Farm had sued the defendants for a declaration that it owed its insured under a homeowner's policy no duty to defend or indemnify for injuries to Louis Molteni. The injuries allegedly occurred when Molteni welded the insured's auto tire rim on which sat a tire that the insured had filled with a flammable tire leak sealant. State Farm claimed that its policy's automobile "ownership, maintenance [or] use" exclusion applied. On cross-motions for summary judgment and adjudication, the court ruled that the insured's failure to warn Molteni "is as a matter of law independent of any maintenance of the insured's vehicle for purposes of determining the applicability of the exclusionary clause . . . ." Because we find the instant injuries within the automobile maintenance exclusion, we shall reverse.

BACKGROUND

■ In reviewing a summary judgment, we determine whether the moving party demonstrated both the absence of a material factual dispute and a right to judgment. (See, e.g., *Gigax* v. *Ralston Purina Co.* (1982) 136 Cal.App.3d 591, 596-597 [186 Cal.Rptr. 395].) In the case before us, the material facts appear undisputed. The case turns on the purely legal ques-

---

[1] For convenience, we refer to defendants collectively as Salas.

tion of the insurance policy exclusion's application to these undisputed facts. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 295, p. 306.)

On May 12, 1986, the insured had in force a homeowner's insurance policy issued by State Farm. That policy insured him for "damages because of bodily injury or property damage . . . ." It excluded "bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of . . . a motor vehicle owned or operated by or rented or loaned to an insured . . . ."

In late April 1986, the insured had purchased three new tires from Dob's Tire Store (Dob's) just prior to leaving on a trip to British Columbia. The same day that he purchased the tires, the new left front tire went flat. Dob's claimed that the wheel's rim had caused the flat. It put a tube in the tire.

On the trip to British Columbia, the right front tire developed a slow leak. After returning from British Columbia and before leaving for Reno, the insured purchased a can of tire leak sealant from an auto parts store. The insured purchased the sealant to stop the leak in the right front tire and to ensure a problem-free drive to Reno. A warning label he read instructed him not to use the product near heat or flame. He then injected the sealant into the right front tire and soon left for Reno.

During the Reno trip, the insured's tire problems continued. The sealant did not seal the right front leak. The left front tire, into which Dob's had placed the tube, went flat. A Reno service-station attendant told the insured that the problem with the left front tire lay with the rim. He sold the insured a used rim, removed the tube, and remounted the tire.

After he returned home, the insured went back to Dob's. Dob's again refused to compensate him. So, just four days after he had injected the tire sealant into the right front tire, he went to Louis Molteni's welding shop for rimwork. He removed the old left front rim from his trunk so that Molteni could weld a crack in the rim. No problems occurred during this welding.

The insured then either took the right front tire and rim off the car or removed it from the trunk where it had been placed as a spare.[2] Neither the insured nor Molteni remembers him mentioning anything to Molteni about the insured's tire leak sealant use. As Molteni began welding the right front

---

[2] In his deposition, the insured claimed that he jacked up the car and took off the right front tire and rim while Molteni welded the old left front rim. In his own deposition, however, Molteni claimed that the insured had taken the right front tire and rim off before arriving at the welding shop. Neither party disputes that Molteni welded the right front rim with the tire still attached.

rim with the tire still attached, the tire exploded and seriously injured Molteni.

On February 6, 1987, Molteni and his wife sued the insured and Nationwide Industries, Inc. (Nationwide). Nationwide allegedly manufactured the tire leak sealant the insured had used. Among other things, the complaint alleged that the insured had negligently failed to warn Molteni that the insured had previously used the sealant.

On August 13, 1987, the insured's insurer, State Farm, filed the instant declaratory relief action against him, the Moltenis, and Nationwide. It sought a declaration that the automobile maintenance exclusion set forth above applied.

On February 8, 1988, State Farm moved for summary judgment. On March 30, 1988, the trial court denied the motion without prejudice to refile. It concluded that State Farm's statement of undisputed facts was inadequate.

On April 14, 1988, the Moltenis moved for summary adjudication of issues. They asked the court to determine whether the exclusion applied. On May 3, 1988, State Farm renoticed its earlier summary judgment and included an ampler undisputed facts statement.

On May 9, 1988, the insured joined the Moltenis' motion in so far as it sought adjudication of the coverage issue. The insured however, objected to those portions of the Moltenis' motion that purported to seek adjudication of the underlying liability issues. Similarly, Nationwide agreed with the insured and the Moltenis on the coverage issue. It merely disputed whether the insured had purchased *its* sealant.

At oral argument on June 16, 1988, all parties and the court agreed that Moltenis' summary adjudication motion should be treated as a summary judgment motion. The court then denied State Farm's motion and granted the Moltenis' motion. From the ensuing judgment in favor of the defendants, State Farm then timely appealed.[3]

## DISCUSSION

■ Where the material facts are undisputed, "the interpretation of the exclusionary clause in [an insurer's] policy is a question of law upon which

---

[3] For some reason, State Farm filed two notices of appeal. On September 20, 1988, we consolidated the separate appeals into the instant case.

we must make our own independent determination. [Citation.]" *(Ohio Casualty Ins. Co.* v. *Hartford Accident & Indemnity Co.* (1983) 148 Cal.App.3d 641, 644 [196 Cal.Rptr. 164].)

■　State Farm claims that the trial court failed to apply an unambiguous exclusion to deny coverage. Salas finds the exclusion ambiguous and urges us to construe it narrowly in its favor. Either as part of this argument, or in addition, Salas claims that the insured's failure to warn Molteni of the tire sealant's use independently caused the injury and brought it beyond the exclusion's scope.

■　Salas's argument "ask[s] us to employ the familiar rule of insurance contract construction that an ambiguity in an insurance policy is to be construed in favor of coverage if semantically permissible. [Citations.] The necessary condition for invocation of this rule is a material ambiguity in the policy language, i.e., a 'material uncertainty in the application of the policy language to the facts upon which the claim of coverage is predicated.' [Citation, fn. omitted.]

■　" 'The question of meaning is framed by the competing claims of the parties regarding the application of the policy language to the material facts of the case. [Citation.]' [Citation.] They must be 'tested against the permissible uses of the language upon which the claims are founded, for the meaning of language is to be found in its usage and the occasion of a usage is an application of the language to particular circumstances.' *[Citation.]* In applying this measure we are directed to read the policy 'as employing the ordinary usages of its terms as they might be understood by the layman in the context of the policy and the purposes which it serves.' [Citation.]" *(United Services Automobile Assn.* v. *Lilly* (1990) 217 Cal.App.3d 1396, 1399 [266 Cal.Rptr. 691].)

■　Salas argues that the exclusion for injury or damage "arising out of the . . . maintenance . . . of . . . a motor vehicle owned or operated by . . . an insured . . . ." is ambiguous. It focuses its argument on the initial terms, "arising out of . . . ." It claims that the ambiguity arises because the phrase, undefined in the policy, is reasonably susceptible to at least two interpretations. On the one hand, it could connote any bare connection between vehicle maintenance and the resultant injury or damage. On the other hand, it could denote only a narrow range of more intimate relationships, akin to tort concepts of proximate cause. (See *Eichelberger* v. *Warner* (1981) 290 Pa.Super. 269 [434 A.2d 747, 749-752] [finding an ambiguity and construing "arising out of" broadly in coverage provision and narrowly in exclusion clause].) Given this proffered semantic range, it argues that we

should apply the cited construction rules and interpret the exclusion narrowly in favor of coverage.[4]

We do not consider ambiguity in the abstract. Rather, ambiguity arises only through the application of language to specific circumstances. As applied to the circumstances before us, we conclude that a layperson would find that the disputed policy provisions unambiguously exclude coverage.

The disputed exclusion mirrors standard policy language. (See *Ohio Casualty, supra,* 148 Cal.App.3d at pp. 644-645; *Transport Indemnity Co.* v. *Schnack, surpa,* 131 Cal.App.3d 149, 152; see also 12 Couch on Insurance (1989 supp.) §§ 44A:127 & 44A:129, pp. 71-81.) Although California courts have considered other portions of the exclusion, we have found no reported case that focuses on the clause's "maintenance" provision. Rather, the cases primarily focus on the clause's companion exclusion for damage "arising out of . . . the *use*" of a motor vehicle. (See, e.g., *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 100-103 [109 Cal.Rptr. 811, 514 P.2d 123], *Ohio Casualty, supra,* 148 Cal.App.3d at pp. 645-647.)

Courts in other states have confronted the "maintenance" provision directly. For example, in *Indiana Ins. Co.* v. *Winston* (Fla.App. 1979) 377 So.2d 718, 720, the court stated: "The term 'maintenance' has been defined as the labor of keeping something in a state of repair or efficiency [citation]. Appleman, in his treatise, indicates that the term maintenance would seem to include acts of either commission or omission relative to the external or mechanical condition of a vehicle. [Citation.]" (Accord *Auto-Owners Ins. Co.* v. *Transamerica Ins.* (S.D. 1984) 357 N.W.2d 519, 522.)

Without more, these definitions of "maintenance" would appear to preclude coverage under the circumstances before us. Neither appear beyond a

---

[4] Salas's reliance upon legal causation concepts as sole support for its ambiguity argument misdirects our inquiry. In the policy before us, State Farm agreed to indemnify the insured, up to the applicable policy limits, for any bodily injury or property damages he might be *"legally liable"* to pay. (Italics added.) From this broad coverage, State Farm then excepted those bodily injury or property damages "arising out of the ownership, maintenance, use, loading or unloading of . . . a motor vehicle owned or operated by or rented or loaned to an insured . . . ." In this context, "arising out of" does not "purport to regulate the theory of liability or the standard of causation . . . ." (*Transport Indemnity Co.* v. *Schnack* (1982) 131 Cal.App.3d 149, 152 [182 Cal.Rptr. 256].) Rather, it merely identifies a set of events, e.g., motor vehicle maintenance activities, and links those events to those bodily injury or property damages excluded from coverage. (See *ibid.*) The particular exclusion before us does not make this link in tort causation terms. Rather, tort causation is assumed within the general insuring clause's requirement that the insured be found legally liable to pay the relevant damages. The "arising out of" connective then broadly links the operative events, e.g., automobile maintenance, with the exclusion.

layperson's ken.[5] An attempt to preserve a tire's air pressure easily fits within the scope of routine automobile maintenance. It does not strain the imagination to conclude that all drivers know that without air pressure, their wheels will not roll.

Salas, however, attempts to extract semantic mileage from the exclusion's "arising out of" provision. Salas argues that the insured's tort, if any, did not arise out of his attempt to maintain the tire's air pressure. Rather, it claims that it arose out of his failure to warn that the sealant might be flammable. As such, it attempts to fit his situation under *Partridge* and *Ohio Casualty*.

In *Partridge, supra,* the insured under a homeowner's policy containing an exclusion identical to the one before us had negligently filed his gun to give it a hair trigger. (10 Cal.3d at p. 97.) He then loaded it in his truck and negligently drove the vehicle off the road while attempting to shoot rabbits from the moving vehicle. (*Id.* at p. 98.) He hit a bump, the hair trigger discharged, and the shot hit and injured a passenger. (*Ibid.*)

The driver had both an automobile liability policy and a homeowner's policy. (10 Cal.3d at pp. 98-99.) The auto policy insured for accidents " 'arising out of the . . . use . . . of the owned motor vehicle.' " (*Id.* at p. 98.) The homeowner's policy excluded coverage for " 'bodily injury . . . arising out of the . . . use of . . . any motor vehicle.' " (*Id.* at p. 99.) Both parties agreed that the auto policy applied. The homeowner's policy insurer, however, argued that the "arising out of" clause should be interpreted identically in both policies. (*Ibid.*) As such, it attempted to exclude coverage under its policy.

The Supreme Court disagreed. It stated: "Although liability under the homeowner's policy could possibly be predicated upon the ambiguity of the exclusionary clause in the context of the instant accident, we need not rely upon this ground . . . . Here the 'use' of Partridge's car was not the sole cause of Vanida's injuries but was only one of two joint causes of the accident. Thus, even if we assume that the connection of the car with the accident is the type of non-ambiguous causal relationship which would normally bring the exclusionary clause into play, the crucial question presented is whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk (the negligent filing of the trigger mechanism) and by an excluded risk (the negligent driving). Defendants correctly contend that when two such risks constitute concurrent proximate

---

[5] Webster's Ninth New Collegiate Dictionary defines "maintenance" in part as: "3. the upkeep of property or equipment." It defines "maintain" in part as: "1. to keep in an existing state (as of repair, efficiency, or validity): preserve from failure or decline ([maintain] machinery)."

causes of an accident, the insurer is liable so long as one of the causes is covered by the policy." (10 Cal.3d at p. 102.)

The court then concluded that the creation of the hair trigger was an act of negligence sufficiently independent of the driving to warrant coverage. In particular, it hypothesized that if the gun owner/driver had taken the gun out of the car and it had accidentally discharged during a walk in the woods, the exclusion would not apply. (10 Cal.3d at p. 103.) Similarly, the court speculated that if the gun owner had lent the gun to a friend and the same injury had occurred, the gun owner's "personal liability would surely be covered by his homeowner's policy, and his friend's liability would be covered by automobile insurance." (*Ibid.*)

In the case before us, Salas tries to fit within *Partridge* by constructing its own hypothetical situations. It claims that if the insured had merely owned a tire that had not belonged to any vehicle that he owned and the same accident had occurred, the exclusion would not apply. Similarly, it claims that if the insured had used the same sealant with a bicycle tire, the exclusion would not apply. Thus, it claims that motor vehicle maintenance was not essential to the tort's commission, and the insured's failure to warn of the sealant's use on the tire was an independent act of negligence.

Salas's hypothetical situations do not bring his case under *Partridge*. In *Partridge*, the covered negligence, i.e., the trigger filing, simply had nothing to do with the excluded negligence, i.e., the driving. Moreover, the Supreme Court's hypothetical illustrations of this principle varied only the place or manner of the gun's discharge. Here, the insured's failure to warn was inextricably bound up with his attempts to maintain his automobile's tire pressure. Salas's hypothetical situations evade the exclusion by removing the entire cause for the insured's use of the sealant, i.e., to maintain his automobile's tire pressure.[6]

Salas's appeal to *Ohio Casualty* is equally unavailing. In that case, this court construed a similar exclusion for damages arising out of the use of "watercraft." (*Ohio Casualty, supra,* 148 Cal.App.3d at p. 644.) The injury occurred when a student dove off a boat into a lake. She was then hit by another boat and injured. The adult boat driver was sued for negligent supervision.

---

[6] The bicycle tire hypothetical ignores the exclusion's limitation to *motor vehicle* maintenance. For whatever reason, State Farm made no attempt to exclude bicycle maintenance liability. Similarly, Salas's vehicle-less tire scenario also erases the exclusion's motor vehicle maintenance provision. The issue is not whether under some other scenario a tire filled with flammable gas might have exploded due to the insured's negligence. Rather, we focus on whether the use of a sealant to maintain an owned motor vehicle's tire pressure fits within the maintenance exclusion. In contrast, in *Partridge,* the hair trigger creation had nothing to do with the truck's use. The truck's misuse only prompted the trigger's discharge.

For guidance, we looked to homeowner's policy exclusions for motor vehicle use. (148 Cal.App.3d at pp. 644-645.) Following *Partridge*, we concluded that the negligent supervision of the student "was a separate and independent cause of the accident, unrelated to [the defendant's] use of the boat." (*Id*. at p. 645.)

In reaching our result, we distinguished two of our post-*Partridge* opinions that had excluded coverage. In *State Farm Fire & Cas. Co.* v. *Camara* (1976) 63 Cal.App.3d 48, 55 [133 Cal.Rptr. 600], we concluded that "the negligent design and construction of a dune buggy by the insured (a covered risk) was not independent of the negligent operation or use of the vehicle (the excluded risk) because 'the *only* way in which plaintiff could have been exposed to the claimed design risk was through the operation or use of the motor vehicle.' [Citation.]" (*Ohio Casualty, supra,* 148 Cal.App.3d at pp. 645-646, italics in *Camara*.) We continued, "[s]imilarly, in *Safeco Insurance Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524, 526 [], the insureds were alleged to have negligently entrusted a motorcycle to their son. In holding the motor vehicle exclusion in the homeowner's policy applicable, we concluded that liability for negligent entrustment of the vehicle could not exist independently of its use. 'Until their son incompetently operated and used the motorcycle and caused injury, no liability against the entrusters arose.' [Citations.]" (*Ohio Casualty, supra,* 148 Cal.App.3d at p. 646.)

After distinguishing *Camara, supra,* and *Safeco Insurance Co.* v. *Gilstrap* (1983) 141 Cal.App.3d 524 [190 Cal.Rptr. 425], we noted that the excluded instrumentality in *Ohio Casualty*, i.e., the watercraft, "did not play an active role in causing the injury. The only 'use' of the boat was to transport [the student and her supervisor] to the scene of the accident. Once there, the boat's engine was turnedoff [*sic*] and it became nothing more than a floating dock or platform. The alleged negligent act was not simply using this platform for diving, because the dive itself did not cause the injury; rather, it was [the supervisor's] alleged negligence in failing to survey the surrounding area and in permitting [the student] to enter the water when [another] boat was, from all appearances, dangerously near. Such negligence on [the supervisor's] part was not in any way dependent on the use of the boat before liability would arise. His liability for his acts would be unaffected whether the acts occurred on a boat, a pier, or on the shore. That they occurred on the boat is fortuitous. For example, if the facts of this case were unchanged, except that [student and supervisor] had been standing on the shore of the lake when the ill-advised permission to swim was granted, the insurer could not contest that the resultant damage would be covered by the homeowner's policy. [*Partridge*.] [The insurer] is attempting to avoid liability simply because the situs of [the supervisor's] negligent conduct was a

boat. *Partridge* teaches that this coincidence cannot defeat the insurer's obligation to indemnify the insured for liability arising from nonwatercraft risks. [Citation.]" (*Ohio Casualty, supra,* 148 Cal.App.3d at p. 646.)

Unlike *Ohio Casualty*, the "excluded instrumentality" in the case before us, i.e., the insured's motor vehicle, was not the mere passive situs of negligence divorced from the vehicle's maintenance. Rather, the insured's entire purpose both in using the sealant and in hiring Molteni to weld the rim was to maintain his tire's air pressure. It was not merely "fortuitous" that that vehicle's tire exploded. The insured's negligence arose at the moment he brought the wheel in for maintenance at Molteni's shop, and failed to tell Molteni of his own earlier efforts at tire maintenance.

Under the circumstances, we find Salas's attempts to find the exclusion ambiguous ineffective. The insured's tortious conduct was inextricably linked to his ineffective attempts to maintain his vehicle. Equally ineffective is its use of *Partridge* and *Ohio Casualty* as semantic support for its ambiguity claim. We conclude that the motor vehicle maintenance exclusion applies unambiguously to Molteni's injury.

## DISPOSITION

Accordingly, we reverse the trial court's judgment in favor of defendants and order the trial court to enter summary judgment in favor of State Farm. Appellant is awarded its costs on appeal.

Puglia, P. J., and Blease, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 25, 1990. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.