851 F.Supp. 1441 (1992)
HOMESTEAD INSURANCE COMPANY, a Pennsylvania corporation, Plaintiff,
v.
The RYNESS COMPANY, a California corporation, et al., Defendant.
No. C 91-3611 FMS.
United States District Court, N.D. California.
July 2, 1992.
*1442 James S. Greenan, Cooper White & Cooper, San Francisco, CA, for Homestead Ins. Co.
Raul V. Aguilar, Raul V. Aguilar Professional Law Corp., San Francisco, CA, Jon S. Heim, Jon S. Heim Law Offices, San Francisco, CA, for The Reyness Co. and Helen Moore.
David S. Secrest, Branson Fitzgerald & Howard, Redwood City, CA, for Thomas Prendergast, Teresa M. Lamb, Russell Smith, Christopher L. Gideon and Margaret I. Gideon.
ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
FERN M. SMITH, District Judge.
This is an action for declaratory judgment as to whether an insurer has a duty to defend or indemnify its insured, a real estate broker, against claims predicated upon the insured's failure to disclose the existence of wastes discharged into or upon land where the policy excludes from coverage claims arising out of the discharge of wastes into or upon land.
Both plaintiff-insurer Homestead Insurance Company ("Homestead") and defendant-insureds The Ryness Company ("Ryness") and Helen Moore ("Moore") (collectively referred to as "the Ryness defendants") move for summary judgment.
For the reasons discussed below, Homestead's motion for summary judgment is GRANTED and the Ryness defendants' motion for summary judgment is DENIED.

BACKGROUND
Ryness is a Pennsylvania corporation licensed by the State of California as a real estate broker. Moore was a real estate agent for Ryness during the time at issue in this lawsuit. In the late 1980s, the Ryness defendants acted as brokers for the sale of condominium units at Peninsula Landing Condominiums in Redwood City, California.
On January 8, 1991, purchasers of the condominium units filed a class action complaint asserting various causes of action (including deceit, negligence and breach of fiduciary duty) against the Ryness defendants and other parties involved in the development, construction and marketing of Peninsula Landing Condominiums ("the underlying action").[1] The core factual allegations are as follows: (1) a parcel of land adjacent to condominium property was "subject to extensive ... dumping of solid and liquid residential, municipal and industrial waste from the years 1945 to 1970," with waste material extending beneath condominium property; (2) the fact that the property was used as a dump site was within the actual or constructive knowledge of each defendant; and (3) defendants failed to disclose the existence of these wastes and dumping activities.
At the time of the suit, the Ryness defendants were covered by a "Special Errors and Omissions Liability Insurance Policy," Policy No. 0100516-90 ("Policy"), underwritten by Homestead. The Policy obligates Homestead to defend and indemnify the Ryness defendants for third party claims for damages caused by "a negligent act, error, or omission" of the Ryness defendants "in the performance of insured services for others."[2] *1443 The "insured services" covered by the Policy are specified on the declarations page of the Policy as "[r]eal estate sales and brokerage, mortgage loan origination and marketing consultation." The Policy excludes from coverage all claims "for or arising out of" a variety of things, including bodily injury, property damage, personal injury, contract claims, unfair competition/antitrust claims, fraud, pollution and nuclear reaction, radiation or radioactive contamination.
On or about February 4, 1991, Ryness tendered the defense of the underlying action to Homestead under the Policy. On March 7, 1991, Homestead reserved all of its rights under the Policy to deny coverage and advised Ryness of Homestead's preliminary opinion that the underlying action was not covered because Exclusion (m), the pollution exclusion, applies. Under Exclusion (m) the Policy does not apply to claims "for or arising out of: ... (m) the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water."
On March 28, 1991, Homestead's agent sent Ryness a more detailed reservation of rights letter including all of the grounds for denial of coverage listed in the March 7, 1991 letter in addition to the ground that the underlying complaint alleged unfair competition and violation of the antitrust laws. The March 28, 1991 letter further advised Ryness that coverage for the suit may be excluded inter alia under Exclusion (m) of the Policy.
Homestead nonetheless offered to defend the Ryness defendants subject to a reservation of rights and subject to an agreement that Ryness would reimburse Homestead for defense costs incurred if a court declared that Homestead was correct in its position that, under Exclusion (m), it had no duty to defend or indemnify the Ryness defendants. By letters dated April 23, 1991 and June 19, 1991, Ryness objected and refused to enter into the proposed reimbursement agreement. Homestead filed this action on October 11, 1991 to determine its rights and obligations under the Policy.[3]

DISCUSSION

A. Standard of Review

1. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The interpretation of an insurance policy or other contract is generally a legal determination. See, e.g., Interstate Prod. Credit Ass'n v. Fireman's Fund Ins. Co., 944 F.2d 536 (9th Cir.1991) (fidelity bond); Congleton v. National Union Fire Ins. Co., 189 Cal.App.3d 51, 59, 234 Cal.Rptr. 218 (1987) (insurance policy). Summary judgment is therefore appropriate where, as here, there are no material issues of fact and the sole question before the Court is one of law. See Pepper Indus., Inc. v. Home Ins. Co., 67 Cal.App.3d 1012, 1017, 134 Cal.Rptr. 904 (1977) (determining duty to defend on summary judgment).

2. Applicable Law

Since this action is before this Court on the basis of diversity of citizenship, the substantive law of California applies. Previews, Inc. v. California Union Ins. Co., 640 F.2d 1026, 1027 (9th Cir.1981).

B. Duty to Defend and Indemnify Under the Policy

An insurer's duty to defend is very broad; it is invoked by any potential for an award of covered damages, whether that potential arises from the pleadings or from extrinsic information known or available to the insurer. Gray v. Zurich Ins. Co., 65 Cal.2d 263, 275-77, 54 Cal.Rptr. 104, 419 P.2d 168 (1966). An insurer, however, "is not required to defend an action against the insured *1444 when the complaint in that action shows on its face that the injury complained of is not covered by, but excluded from, the policy." California Ins. Guarantee Ass'n v. Wood, 217 Cal.App.3d 944, 948, 266 Cal.Rptr. 250 (1990).
Homestead "can exclude coverage by language which is conspicuous, plain and clear." Id. (citation omitted). If it "does so in unambiguous terms [the Ryness defendants have] no rights under the [Policy]." Id. The issue here is therefore whether the Policy's pollution exclusion, Exclusion (m), unambiguously excludes coverage in the underlying action.

1. Does the Policy Exclude Claims for Nondisclosure of Waste Dumping?

Homestead argues that the plain meaning of Exclusion (m)'s terms exclude from coverage the claims in the underlying action because they all "arise out of" the "discharge, dispersal or escape of ... waste materials." Homestead notes that the phrase "arising out of" is "ordinarily understood to mean `originating from,' `having its origin in,' `growing out of,' or `flowing from,' or in short, incident to, or having connection with," Continental Casualty Co. v. City of Richmond, 763 F.2d 1076, 1080 (9th Cir.1985) (citations omitted); hence, Homestead argues, nondisclosure of the waste dumping activities "arises out of" those activities for purposes of Exclusion (m).
Each potentially covered cause of action in the underlying complaint is indeed founded on alleged nondisclosure of the dumping of waste materials.[4] Whether the claims "arise out of" the discharge of said waste materials, however, depends on whether the nondisclosure of the dumping of waste can be asserted as an independent ground for coverage from the existence of an excluded risk. See Safeco Ins. Co. v. Gilstrap, 141 Cal.App.3d 524, 527-30, 190 Cal.Rptr. 425 (1983). If an otherwise covered type of negligent conduct (nondisclosure) is wholly dependent upon, or "inextricably linked" to, an excluded underlying event (dumping of waste), the exclusion at issue (Exclusion (m)) applies. State Farm Fire & Casualty Co. v. Salas, 222 Cal.App.3d 268, 277-78, 271 Cal.Rptr. 642 (1990).[5]
The alleged nondisclosure of waste dumping in the underlying complaint is dependent upon and inextricably linked to the excluded dumping of waste. In other words, nondisclosure of waste cannot be asserted as an independent ground for coverage. See Safeco, 141 Cal.App.3d at 527-30. No basis for liability exists unless the excluded pollution activity exists. Cf. Ohio Casualty Ins. Co. v. Hartford Accident & Indem. Co., 148 Cal. App.3d 641, 646, 196 Cal.Rptr. 164 (1983) (finding coverage where insured would be liable for negligence even if excluded activity did not exist).[6] This finding, however, does not always compel a holding that the pertinent pollution exclusion forecloses an insurer's duty to defend or indemnify. The policy at issue may still contain language creating a potential for coverage despite the exclusion or contain ambiguous exclusionary language. A close reading of the Policy ensures that is not the case here; Exclusion (m) unambiguously excludes coverage in the underlying action.
The Policy is an errors and omissions policy covering only "real estate sales and brokerage, mortgage loan origination and marketing consultation" services. The only conduct within the scope of the general coverage provisions which could "arise out of" the type of pollution described in Exclusion (m) is errors in the transfer of information regarding that pollution, e.g., nondisclosure or misrepresentation of waste dumping. By inserting a Exclusion (m) in the Policy, Homestead declined to provide coverage for negligent *1445 misrepresentation, nondisclosure and noninvestigation of pollution, while Ryness benefitted from a more affordable premium. Claims for nondisclosure of pollution were therefore not a risk factored into the cost of the Policy. See Giddings v. Industrial Indem. Co., 112 Cal.App.3d 213, 218, 169 Cal. Rptr. 278 (1980) ("The insurer's obligation is not unlimited; the duty to defend is measured by the nature and kind of risk covered by the policy."). The Court may not provide the Ryness defendants with insurance for which they neither bargained nor paid.
A finding of no coverage is also supported by the treatment of the more qualified exclusionary language found in pollution exclusion provisions in comprehensive general liability policies. In United States Fidelity & Guar. Co. v. Korman Corp., 693 F.Supp. 253 (E.D.Pa.1988), for example, purchasers of homes sued a developer for breach of express and implied warranty when they discovered that illegal dumping of hazardous waste in a landfill adjacent to their properties had been going on for years prior to the building of their homes. In the developer's coverage action against its insurer, the court found that the pollution exclusion unambiguously excluded such claims because they "arose out of" the dumping of the hazardous wastes, even though the developer was not the polluter. Id. at 259. The insurers were accordingly found to have no duty to defend nor indemnify. Id. at 261. The Korman court's reasoning is equally persuasive here.

2. Does the Underlying Action Include Covered Claims Unrelated to Pollution?

The Ryness defendants contend that the complaint in the underlying complaint includes covered claims unrelated to pollution. Specifically, they contend that the complaint asserts claims for misrepresentation as to the former use of the subject property unrelated to the existence of toxic substances. This is important because in California an insurer has a duty to defend an action which involves covered claims, even though other asserted claims are not covered. Hogan v. Midland Nat'l Ins. Co., 3 Cal.3d 553, 564, 91 Cal.Rptr. 153, 476 P.2d 825 (1970); Ohio Casualty Ins. Co. v. Hubbard, 162 Cal.App.3d 939, 944, 208 Cal.Rptr. 806 (1984).
The Ryness defendants' argument is not persuasive, however. A close reading of the underlying complaint reveals that each of the asserted claims is wholly based on nondisclosure of waste materials. It is inapposite, contrary to the Ryness defendants' suggestion, that liability could exist if the waste dump had been subsequently cleaned or if the land had been zoned as a dump but one never built. First, the Ryness defendants fail to cite, nor has the Court found, any authority for their contention that former use alone is a separate basis for liability. Second, it is irrelevant that a different set of factual circumstances might not trigger Exclusion (m); here, the only alleged past use of the property was for waste disposal. Cf. Korman, 693 F.Supp. at 259 (alleged exposure arising from same "leaching of wastes" also excluded).

CONCLUSION
For the foregoing reasons, Homestead's motion for summary judgment is hereby GRANTED and the Ryness defendants' motion for summary judgment is hereby DENIED.
The Clerk shall close the file.
SO ORDERED.
NOTES
[1] The underlying action was filed in San Mateo County Superior Court as Prendergast v. The Ryness Company, No. 357803 (Cal.Sup.Ct. filed Jan. 8, 1991). The operative complaint in the underlying action is the third amended complaint filed on January 16, 1992.
[2] The Policy provides coverage for damages "caused by a negligent act, error or omission of [Ryness] or of any other person for whose negligent act, error or omission [Ryness] is legally responsible in the performance of insured services for others...." Moore was a real estate agent for Ryness during the time at issue in this lawsuit and is therefore arguably covered by the Policy. Homestead, however, reserves all its rights with respect to defense and indemnity of Moore.
[3] Exclusion (m) is the only coverage defense alleged in this action.
[4] The Ryness defendants' contention that the underlying complaint contains covered claims unrelated to pollution is unpersuasive. See infra Section B.2.
[5] Where the excluded underlying event is merely "fortuitous" or "coincidental" to liability, on the other hand, it does not trigger an exclusion to insurance coverage. See Ohio Casualty Ins. Co. v. Hartford Accident & Indem. Co., 148 Cal. App.3d 641, 646, 196 Cal.Rptr. 164 (1983).
[6] Defendants reliance on Evanston Ins. Co. v. Treister, 794 F.Supp. 560 (D.V.I.1992), to support a finding that nondisclosure of waste dumping can be asserted as an independent ground for coverage in the instant case is unfounded. The covered negligence at issue in Treister (architect's negligent design of sewer lines) existed independently of and prior to the pollution.